## THE STATE, WILLIAM SIGLER, PROSECUTOR, v. EDWARD C. FULLER, COLLECTOR, &c.

1. The power to assess for local improvements is a part of the great legislative prerogative of taxation.

2. This class of assessments is distinguishable from our general idea of a tax, but owes its origin to the same source or power, and this power to tax should exist in the discretion of the legislature, without the interference of the courts, unless some radical principle is violated, or the guarantees of the constitution disturbed under color of its exercise.

3. It is a legitimate exercise of the taxing power for the legislature to authorize the whole cost of a local improvement, such as opening, grading, and paving streets, to be assessed upon lands which, by reason of their peculiar location, may be regarded as benefited—and such authority is not in violation of the constitutional clause against taking private property without just compensation.

4. The mode of apportioning the tax and the extent of territory that may be embraced within it, are necessarily matters of legislative discretion.

5. After a certain amount of tax has been voted to be raised by legislative authority for a lawful purpose, it is no ground of objection to the payment of the tax that a part of it has been misappropriated.

On *certiorari*. In matter of assessment for paving and improving sidewalks, &c.

The writ in this case brings before the court an assessment made in virtue of an act of the legislature of April 1st, 1869, by the township committee, on the owners of property in the different districts of the township of Montclair, in the county of Essex, for the improvement of streets, sidewalks, &c., on application made to them according to the provisions of the act. The proceedings of the committee are stated in the opinion of the court. The principal points relied on to set aside the assessment were:

1. That the law was unconstitutional, inasmuch as it authorized private property to be taken for public use without compensation being made.

2. That a part of the money, if collected, would be misap-

plied, and used for purposes not within the provisions of the act.

The case was argued in the presence of BEDLE and DAL-RIMPLE, Justices.

For the prosecutor, *Theodore Runyon*.

For the defendant, *C. Parker*.

The opinion of the court was delivered by

BEDLE, J.    By an act approved April 1st, 1869, the township of Montclair, in Essex county, was divided into four road districts, and provision was made that whenever a petition in writing, was presented to the township committee, signed by the owners of one-half the number of lineal feet upon one side of any road, street, or avenue in said township, or upon so much of one side thereof as lay between two points named in the petition, requesting to have the sidewalks between said points, and on the side named in the petition, laid with stone, plank, or composition, and setting forth the material and the width, or if requested in writing by ten freeholders and voters of any of said districts, the township committee were authorized to issue a call, upon a certain notice, for a meeting of the legal voters of the district in which the sidewalk was petitioned for, stating the time, place, and object of the meeting.    At which time the legal voters convened, or a majority, were empowered to raise by tax such sum as they should determine, for the construction of sidewalks therein, to be assessed and collected as other township taxes; and as soon as the committee should receive notice that such sum was directed to be raised, they were required to ascertain the cost of constructing the sidewalks petitioned for, and to lay the same and pay therefor three-sixths of the cost from the amount so authorized to be raised, and to assess upon the owners of lands upon the side

where the said walk was located, two-sixths of the whole cost, and against the owners of land on the opposite side, the remaining one-sixth; the basis of which assessment was to be the number of lineal feet owned by each person, in front of whose land the sidewalk was laid, whether upon the same or the opposite side of the walk, and the amounts so assessed were to be included in the other tax bills of persons assessed under the act for the general tax, and collected at the same time and manner as the township taxes.

Under the act referred to, it was determined at a meeting of the legal voters of district No. 2, held on the 16th day of June, 1869, to raise $5,500 for the construction of such sidewalks as were petitioned for in that district, $27.50 of which sum was assessed upon the prosecutor as a general tax, and as the owner of houses and lots upon different streets and roads opposite to which sidewalks were laid; four several assessments were made against him by the committee for the one-sixth of the cost of their construction, the amounts thereof being $8.35, $5.54, $3.26, and $6.06, respectively. The case shows that all the sidewalks were petitioned for according to the act.

These assessments of one-sixth of the cost of constructing sidewalks in front of other lands, opposite to the prosecutor's, it is alleged, are unconstitutional, as taking private property for public use without compensation, and the case of *The Tidewater Company* v. *Coster*, in the Court of Errors and Appeals, 3 *C. E. Green* 519, is invoked to support the proposition. The point of the argument is, that the owner opposite cannot be assessed beyond the benefit received, and that the fixing of an arbitrary rate may exceed the benefit. The general doctrine of the Tidewater case is, that the cost of a public improvement may be imposed upon lands peculiarly benefited to the extent of the benefit, but not beyond it, and that any excess of expense that may be assessed over the benefit is, *pro tanto*, a taking of private property for public use without compensation. How far, then, does that doctrine control the legislature in fixing the rate made and

extent of taxation for a local improvement like this in ques-
tion? The power to assess for such improvements is a part
of the great legislative prerogative of taxation, and the sys-
tem of assessing for street improvements according to the
peculiar benefits received by property adjacent or near, has
grown out of the apparent injustice of raising by a general
tax what should be raised from those locally and peculiarly
benefited. *The People* v. *The City of Brooklyn*, 4 *Comst.*
430. This class of assessments is distinguishable from our
general idea of a tax, but owes its origin to the same source
or power; and this power to tax should exist in the discre·
tion of the legislature, without the interference of the courts,
unless some radical principle is violated or the guarantees of
the constitution are disturbed under color of its exercise. In
the Tidewater case, the work contemplated by the act of in-
corporation was regarded by the court as an improvement,
in which the public were largely interested, and that the
state had intervened upon the ground of public necessity and
convenience. Also, that the enterprise was hazardous, and
might fail as enterprises of a similar character had; that the
whole expense was to be assessed upon the lands reclaimed,
and it was held that the land-owner could not, without his
consent, be involved in such a. risk, the expense of which
might take all his land from him if the experiment required
it. If successful, the public would be greatly benefited, all
at the expense of the land-owner; and if a failure, the public
would bear no loss, and his land might be swept away. This,
in the opinion of the court, was a case where the public would
either take private property over and above the benefits for
a great public use, or involve it in the hazards of a project
that might take it all in an attempt to accomplish an exten-
sive public good. This was treated as an invasion of the
organic law; that private property shall not be taken for pub-
lic use without just compensation, and I have no doubt of
the right and duty of this court to see that that provision of
the constitution is not sought to be broken down by any mis-
use of the powers of taxation or eminent domain. At the

same time, while seeing that private property has all the protection that the constitution can give it, the courts have no right to disturb any act of the legislature that can be sustained within a proper exercise of the sovereign power, and as remarked by Justice Sharswood in the case of *Hammett* v. *Philadelphia, Am. Law Reg., July,* 1869, the power of taxation is not to be rigidly scanned, and every presumption is to be made in its favor. It is well settled that it is a legitimate exercise of the taxing power for the legislature to authorize the whole cost of a local improvement, such as opening, grading, and paving streets, to be assessed upon lands which, by reason of their peculiar location, may be regarded as benefited, and that such authority is not in violation of the constitutional clause against taking private property without just compensation. *Sedg. Stat. Law* 502, &c., *and cases cited; People* v. *Brooklyn,* 4 *Comst.* 420; *Hammett* v. *Philadelphia, and cases cited, Law Reg., July,* 1869; *State* v. *Newark,* 3 *Dutcher* 193.

The course of municipal legislation in this state is based upon that principle, and the courts have not disturbed it, but, on the contrary, incidentally treated it as correct. These improvements are of a local character, and although made with an eye to the public convenience, are presumed in their very nature, to give an equivalent benefit for the cost, upon the locality where made. They usually accompany the development and growth of a district or neighborhood, and practically their full cost can be traced in the enhanced value of the property adjacent, or in the particular district or neighborhood. They are not, as a rule, experimental or hazardous in their results; their cost is reasonably certain and limited, and they are the usual and necessary means for promoting the utility and convenient enjoyment of property and increasing its value. In the case of *Hammett* v. *Philadelphia,* it was held that a special assessment could not be made where the improvement was for a general public benefit, and not clearly conferring special benefits, and however the application of that principle in that case—it being for

repaving a street—may be questioned, it was there admitted as settled that the *original* paving of a street was clearly within the principle of assessing the expense on the lots lying upon it. It must, therefore, be taken as a principle, that the legislature' can provide for the whole cost of such local improvements as the one before us, to be assessed upon lands peculiarly benefited.    It is the imposition of a tax for a mere local improvement, so classed and regarded in the law, according to the benefit received by the ownership of lands in the necessity of the improvement.

The mode of its apportionment and the extent of territory that may be embraced within it are necessarily matters of legislative discretion.    These are the necessary incidents of the exercise of the power, and upon the same principle which the legislature can define the limits of a borough, or any municipal or *quasi* municipal district, and provide for the costs of improvements to be assessed upon all the lands within it, according to benefits, that same power can determine that the scope of the assessment shall be limited to a smaller district or a particular class of owners peculiarly situated and benefited with reference to the improvements, and so also the mode of apportionment may be fixed, whether according to valuation or frontage.    In either case, there must necessarily be some inequalities, for no mode of taxation works entirely equal. The rule ought to be uniform as to the particular class of owners, but whether one mode or the other is preferable, is a matter of discretion with the legislature, with which the courts should not interfere, unless it can be clearly seen that the provisions of the constitution are disregarded.    The following cases and references sustain or recognize these principles, at least to the extent stated :  *Sedg. Stat. Laws* 503, *and cases cited ; People* v. *Brooklyn,* 4 *Comst.* 420 ; *Northern Indiana R. R. Co.* v. *Connelly,* 10 *Ohio (N. S.)* 159 ; *Hammett* v. *Philadelphia, (ante ;) Commonwealth* v. *Woods,* 8 *Wright* 113 ; *Magee* v. *Commonwealth,* 10 *Wright* 359 ; *State* v. *Newark* (ELMER, J.,) 3 *Dutcher* 192 ; *State* v. *Jersey City,* 4 *Dutcher* 506.

The case of *The State, Parker, pros.,* v. *New Brunswick,* 1 *Vroom* 397, in this court, was upon an assessment in that city against the owners and occupiers of lots fronting on a certain part of a street, for the whole expense of regulating, grading, guttering, and paving it, including the sidewalks, and Justice Haines, in the opinion of the court, remarks " that the improvement is presumed to be for the benefit of the owners, and to increase the intrinsic value of their lots, and there is no injustice in requiring them to pay the expense of the improvement, which is to contribute to their enjoyment and to promote their interest." Legislation in this state, from an early period, concerning our cities, has proceeded upon the same idea, and the case of *Paxson* v. *Sweet,* 1 *Green* 197, gives an instance. That, it is true, was before our present constitution, but there is nothing in that instrument that can affect the same exercise of sovereign power as to that class of local improvements, unless it be the provision in regard to taking private property for public use, and that is not considered to abridge the right, unless, under color of it, that provision is clearly defied or invaded. It may be urged that where the assessment is for sidewalks on a man's own land, the owner gets the benefit of the identical work, but that where the assessment is upon lands opposite, the benefit is not so tangible. That consideration is not the test of benefits, for it is well understood that the expense of street improvements can be legally assessed upon land, not only on which the improvement is made, but upon land adjacent and in the vicinity. Location in the neighborhood of improvements, and the consequent convenience and opportunity for the enjoyment of the same, are elements of value, and do enhance the worth of lands. Besides, in a locality like this in question, where the full growth of a city has not extended, one sidewalk is probably sufficient at present, and, in providing for its construction, the legislature could, without doubt, regard the opposite lands as benefited. Had a walk been contemplated on both sides, all the owners on the street, within a fixed locality, could have been

compelled to bear the whole expense; but, instead of that, one sidewalk at a time is provided for, and one-half of the cost taken out of a general tax, two-sixths assessed on the owners where the sidewalk is built, and one-sixths on the owners opposite. Should another sidewalk be ordered, two-sixths would then fall upon the prosecutor and others in like situation, and one-sixth on the owners opposite, making, thus, each side bear one-half of the expense of its own walk. Such an adjustment of the assessments, whether one sidewalk is constructed or both, seems to me to exhibit a very careful regard to the interests of the land-owners, when it is understood that the legislature could have assessed the whole cost of this improvement upon those in the vicinity of it.

There is nothing in the case furnished us to show that the locality of the prosecutor's lands is different from other lands generally, upon the streets or roads where the sidewalks have been laid, and therefore no opinion is indicated as to how far the court would control an assessment, where, by reason of an unusual and very expensive work on a street, a land-owner, on account of the peculiar situation of his land, might be assessed so as palpably to exceed any benefit received. It, I think, would take a strong case to call for the interposition of the court, where the improvement was amongst those known as local, and the legislature had fixed the locality to be assessed, and the rate or rule of apportionment. The frontage principle, by lineal feet, is not necessarily wrong, even when commissioners are required to assess generally, according to benefits; and in *Peters* v. *Newark*, 2 *Vroom* 361, this court refused to set aside an assessment where all the property, including that with buildings, was assessed as unimproved land. The facts do not even show that the rule of apportionment according to frontage worked any inequality; and if they did, it was a rule which the legislature, in its discretion, had power to adopt. This tax should not be disturbed, for the reason just considered.

' The assessment of $8.35, and part of the general assessment, are now attacked, upon the ground that the road

State, Sigler, pros., v. Fuller, Collector, &c.

where the $8.35 is assessed was a turnpike. The case describes the prosecutor's land as "on the north side of Main street, otherwise the Newark and Pompton turnpike." Nothing else is said about it. The court must take it as in fact a street, although it is a turnpike. It may be both. *State, Parker, pros.*, v. *New Brunswick*, 3 *Vroom* 549. This writ is not prosecuted by the turnpike company. They do not complain of any infringement of their rights. The improvements have been made, and are not of such a character, being sidewalks, as could easily injure the turnpike company, did they complain. The language of the supplement of 1868, under which the improvements were made, is sufficiently broad to cover this street, and this part of the case comes directly within the *State* v. *New Brunswick*, referred to in 3 *Vroom*, and the same case in this court, 1 *Vroom* 395. The fact that the turnpike in that case was in a city, while this is yet in a township, can make no difference, as the legislature has the same right to provide for improvements in a small district, when, in their judgment, the public demands require it, as in a city ; and a turnpike may become as much a public street, so far as the necessity of sidewalks is concerned, in such smaller locality, although a turnpike, as in a large municipality.

The last reason referred to is no cause for disturbing the assessment.

The remaining objection is, that about $500 of the money which was voted to be raised for constructing sidewalks, was expended in constructing walks across the streets along which such sidewalks were laid.

It does not appear that any part of this sum was included in the special assessments. The case does not show whether these crosswalks were to connect the sidewalks, so as to make a continuous walk between the points named in the petition, or whether they extended from the sidewalk to the opposite side of the street, upon which there was no sidewalk. I see no objection in the act, to making a continuous sidewalk between the points petitioned for, although it may cross other

streets.    Under these circumstances, the court cannot say there was any undue expenditure; but if there was, it is not a good reason, after a certain amount has been voted for a lawful purpose, for a person to refuse to pay his tax because the committee have misappropriated some of the total amount.    This mode of voting and assessing a certain amount for sidewalks is analogous to the raising of money by a township for poor, roads, &c., and a tax-payer cannot refuse to pay the amount voted to be raised, because, after the vote, the committee have misappropriated part of the fund.    There is a great difference between voting a fund for an object improper, and voting it for a proper object, and then to have it misappropriated.

The assessments against the prosecutor must all be affirmed.

CITED *in State, Agens, pros., v. Newark,* 6 *Vr.* 172; *State, H. L. & I. Co.; pros., v. Hoboken,* 7 *Vr.* 293; *State, Agens, pros., v. Newark,* 8 *Vr.* 423; *State, Baldwin, pros., v. Fuller,* 10 *Vr.* 581.