THE STATE, LAWRENCE CRONIN ET AL., PROSECUTORS, v. THE MAYOR AND ALDERMEN OF JERSEY CITY.

1. Assessment on lands fronting on a street in proportion to frontage, to pay the cost of filling that part of the street occupied by the sidewalk, is illegal.

2. A preliminary petition to have the flags and curbs in a street re-set, *when necessary*, and new flags and curbs, *where required*, is too uncertain to be notice to parties interested.

3. Under the charter of Jersey City, re-setting flags and curbs constitute repairs, and cannot be assessed for.

On *certioraris* to bring up street assessments for improvements on Grand street, Jersey City, from Washington street to Mill creek.

Argued at February Term, 1876, before Justices DEPUE and KNAPP.

For the prosecutors, *Collins* and *Flemming*.

For the defendants, *Lewis*.

The opinion of the court was delivered by

KNAPP, J. These several writs of *certiorari* bring up for review assessments made for grading, flagging, and curbing sidewalks on Grand street, Jersey City, and for grading, flagging, and curbing the intersections on Grand street, from Washington street to Mill creek. One return, by agreement, is taken as the return to all the writs.

The commissioners of assessment have presented two reports, with maps accompanying each. One report embraces the assessment for the grading of the sidewalks, amounting, in the aggregate, to $3053.42. The other, the cost of flagging and curbing the sidewalks, and the grading and flagging, and curbing the intersections, amounting to $18,485.82.

The first report is for the cost of excavation and filling that part of Grand street devoted to sidewalks, and on which they were laid, and reports the assessment therefor to have been made in the following manner : " The expense of excavating rock, and all other excavations upon all the property benefited by such excavation and to be assessed for said improvement ; the expense of filling upon each lot or parcel of land ;

the expense of the labor and material necessary to grade the street in front of it." The commissioners, in reporting upon their assessment for excavation, have adopted the language used in the twenty-first section of the act of 1873, (*Pamph. L., p.* 405,) and make no further disclosure of the principle upon which that part of their assessment was made.

If the provision itself can be so far aided by intendment as to furnish a valid mode of assessment for the cost of a local improvement, the report of the commissioners cannot, in like manner, be aided ; and it is defective in that the assessment does not appear to have been imposed in the ratio of benefits received, nor does it appear that the assessments made upon the several parcels of property were not in excess of the special advantages resulting to the property by the improvement. All that does appear is, that the whole cost of excavation was assessed upon the lands which were benefited thereby.

The cost of grading that part of the street upon which the sidewalk was to be laid, was assessed upon each lot, according to the expense of filling (including labor and material) done in front of such lot. This is not in accordance with any recognized legal principle of taxation for local improvements. It is the imposition of a tax upon special lands, without any reference to benefits conferred upon such lands. As a mode of assessment, it is purely arbitrary, and was condemned by this court in *The State, Van Tassel et al., pros.*, v. *Mayor, &c., of Jersey City*, 8 *Vroom* 129. The same case draws the distinction between laying a sidewalk, an assessment for the cost of which may be entirely charged upon the abutting land in proportion to the lineal feet of the frontage, and the filling and grading of a public street which is to form the foundation and bed for such sidewalk.

In the second report is contained the assessment for flagging and curbing the sidewalks from Washington street to Mill creek, and *grading*, flagging and curbing the intersection of streets. The cost of the former is assessed upon the lands fronting on the improvement in proportion to frontage, and of the latter, " equally, at so much per lineal foot of frontage

State, Cronin, pros., v. Mayor, &c., of Jersey City.

on all lands extending from each intersection one half the distance to the nearest street, in every direction." The reasons for setting aside the part of the assessment embraced in this report are, substantially, that the petition or application for the improvement, under which the work assessed for is alleged to have been done, asks for no sidewalks along the lands of the prosecutors, nor for any flagging of intersections on Grand street; that no notice was given by defendants of the making or filing of any assessment for flagging or curbing sidewalks, nor was any resolution confirming such assessment passed by the proper authorities.

The city, in making local improvements, proceed under a special power, and, lawfully, can do nothing outside of such a power. Such rigid observance of it as would tend to defeat the object to be accomplished is not required, but a substantial compliance with legal direction is exacted. *State, Wilkinson et al., pros.,* v. *Trenton,* 7 *Vroom* 500, and cases cited.

The forty-seventh section of the act to reorganize the local government of Jersey City, (*Laws,* 1871, *p.* 1118,) requires that application shall be made, in writing, to the board of public works for the particular improvement desired, as a step preliminary to its performance. Notice of the application is required to be given by public advertisement, to the end that all persons interested in the proposed enterprise may appear before the board and be heard in relation thereto. These steps are, by the terms of the charter, made necessary only when the proposed improvement is intended to be paid for, in whole or in part, by special assessments, the city authorities having power, in their discretion, to flag and curb sidewalks without application or notice, when the purpose is to pay for the cost by general tax. The fifty-fourth section of the act of 1871 provides for all repairs to sidewalks and curbs, and authorizes the board of works to require the owner of the lot in front of which repairs may be needed, by notice to him to make such amendment, and if not done by the owner, the city may do it, and sue for the expense as for labor done and

material provided for him, but no authority is given to make the cost of such repairs by an assessment of any kind.

· The application under which the work assessed for is claimed to have been done by the city, asks that "Grand street, from the centre of Mill creek to the easterly side of Washington street, be graded to the grade established, be paved with Nicholson pavement, have the curbs and flags re-set where necessary, and have new curbs and flags set where required." Notice, in accordance with this application, was given in the manner required by the charter, and many of the prosecutors appeared as remonstrants against the proposal to pave the street. A contract for paving the street with Nicholson pavement was made by the city, but that contract and the proceedings respecting it were set aside by this court on *certiorari.* The street was subsequently graded and paved with a different sort of pavement, whether or not upon new application and notice, does not appear in the case, but an assessment for the cost of such grading and paving was made by the commissioners of assessment, and at the last term of this court set aside upon *certiorari.*

The point now raised is, whether the part of the application presented to the board of works, and the notice following it, respecting curbing and flagging, is such compliance with the directions of the city charter as to justify these assessments for the work that is claimed to have been done thereunder by the city. The testimony shows that Grand street had, previous to this application, been raised and filled to a grade established by the mayor and aldermen of Jersey City ; that sidewalks had been laid, with flagging, curbing and guttering, along nearly the whole line of the street ; that nearly all the prosecutors had sidewalks in front of their lands along this street, placed there at their expense, under the authority and according to the grade established by the city government. A great part of this street was made over marshy lands, and by reason of the weight of the filling placed upon the street to bring it to grade, the street had sunk in some

places more than two feet below the established grade. The object of this application seems to have been, by further filling to restore the street to its former level. Could the application filed with the board of works, and the notice under it, inform the prosecutors that their sidewalks were to be flagged and curbed? This is the work for which they are assessed, not for re-setting, flagging and curbing. Flagging and curbing the sidewalks, following proper application and notice, can be assessed for under the charter. Repairs cannot be assessed for. The petitioners ask to have the curbs and flags re-set *where necessary*, and have new curbs and flags set *where required*. This may mean that where sidewalks already exist, (which was the case in front of the lands of most of the prosecutors,) the flags and curbs shall be re-set, if necessary, and new flags and curbs be placed where there are none. If this be the meaning of the petition, then the latter condition and request does not apply to the prosecutors, because they had sidewalks already laid, and, as to them, there was no petition to flag and curb their sidewalks. As to the part of the petition to re-set the curbs and flagging of sidewalks already laid, it is not a work which may be petitioned for under the charter, with the view of supporting a special assessment upon land-owners for the cost of the work when done. It asks for a mere repair of sidewalks, and can have no force other than as a mere request to the board of works to require the owners to repair their sidewalks, and, on failure of the owners to make the required amendment, that the board may otherwise follow the directions of the act in causing it to be done.

I regard the petition as too uncertain in meaning, as to whose sidewalks should be flagged and curbed, to have been of any service in giving notice to the prosecutors that they, or any of them, were intended to be affected by it, and too uncertain to support this assessment.

A petition that all the sidewalks in the city, or any one or more streets, might be flagged and curbed where necessary, would be notice to no one, and persons who should find new sidewalks made along their lands, where none had before

existed, or their old sidewalks torn up, their flagging and curbing removed and replaced by new, might, for aught that appeared in such petition, have considered the work to be that of the city, done in the exercise of the discretion conferred by the charter upon the board of works, and to be paid for out of the city treasury.

The mode of assessment as made by the commissioners for the work embraced in their second report, viz.: the flagging and curbing sidewalks, and *grading*, flagging and curbing intersections, although in accordance with the directions of the city charter, is objectionable in that it inseparably combines in one assessment the cost for flagging and curbing sidewalks, and the cost of grading intersections and flagging and curbing intersections; the work on the intersections is assessed on lands fronting on the street included in the half of the block next to the intersection, and in proportion to frontage. The grading is a part of the public street, and, as above stated, the cost of it cannot be assessed for, except upon the principle of benefits, that being illegal would vitiate an entire assessment which included it.

As to the assessment for flagging and curbing the intersections, I am unable to discover any recognized principle upon which the cost can be imposed upon the owners of lands half way along the block in proportion to the lineal feet of ownership. It is not nor can it be treated as an appendage to their lands in the sense that a sidewalk *in front* of each owner's lot, is said to be for the purpose of assessing its costs. If the crossing is, in that sense, appendant to any lands on the street, it is not to half the block, it has physical connection only with the corner lot, but such lot has never been held chargeable with the cost of any more sidewalk than lay in front of it. Thirty-seven lineal feet of said walk cannot lie in front of a lot twenty-five feet wide, and the additional twelve feet of intersection should not be chargeable on the corner. It has no connection with the other lots, except as has every other part of the public street, and cannot, as was done in this case, be assessed on the other lots regardless of the

State, Cronin, pros., v. Mayor, &c., of Jersey City.

question of benefits, without further extending the exceptional method of taxing for sidewalks, and thereby further trenching upon the just rule enunciated and applied by the Court Errors in the Agens case.

It is clear that a street crossing cannot be so assessed for, and to hold that the cost of a sidewalk intersection can be imposed upon the adjoining lot, or half the adjoining block, would be to make a distinction between cases alike in principle.

The assessments for grading and costs of intersections are so blended with the other that no mode appears for separating them, and for that they are illegal, and so intermingled, this assessment should be set aside, even if the work assessed for had the foundational authority of proper petition and notice.

But I regard as clear, that the petition and notice, in respect to sidewalks, were too uncertain to support the assessment against them. The prosecutors are not in any laches in prosecuting these writs. They were justified in concluding from the terms of the preliminary petition, that nothing was proposed therein respecting flagging and curbing that could affect their lands, or subject them to special assessment.

The further objection is urged against these proceedings, that no notice was given of the filing of the assessment under which the city makes claim against the prosecutors. Such notice is made necessary by the charter.

Before an assessment for such an improvement can be confirmed and made effective by corporate action, notice must be given for two weeks of the filing of the assessment, that interested parties may be heard.

It appears by the return made to the writs, that notice of filing an assessment for grading sidewalks on Grand street was given, also a notice of an assessment for the flagging, curbing, and grading of intersections. There is no notice of the assessment for flagging and curbing sidewalks, and flagging, curbing, and grading intersections. In the latter notice, no mention is made of sidewalks as forming part of the assessment. The notice given should describe the assessment with sufficient certainty to inform interested parties that they are

to be taxed, and for what.   The failure to give such notice is an omission fatal to the assessment.   The notice of the assessment in which the cost of flagging and curbing sidewalks was included, was not legally sufficient.

Among the other reasons that were urged why the assessment relating to grading, flagging, and curbing sidewalks should not be supported, I shall notice but one.   It is assigned to all the writs, and applies to most of the prosecutors.   It is, *that the city, in point of fact, did not do the work for which the assessment is made.*   It is clearly shown by the testimony taken in this case, and not controverted by defendants, that neither the city nor its contractor did any of the work in the grading, flagging, and curbing the sidewalks for which most of these prosecutors are assessed.   It is shown that these prosecutors, finding that the enterprise of grading the sidewalks and re-flagging the same, and re-setting curbs, would become necessary, by raising the street grade, to avoid the proverbially high price of improvements under municipal management, determined to do this sidewalk work themselves, and, to that end, employed and paid men to raise the walk to grade, and re-lay the flags and re-set the curbs at their own expense ; that the city did no part of the work, yet the prosecutors are assessed for it the same as if the city had done the work and borne the expense of the improvement, and at the same liberal rates of charge allowed in the city contract.

This work was done by the owners to the city's acceptance ; it remains as they left it.   The testimony shows that the cost to these owners for the work for which they are assessed was only about half the amount the city has assessed them for doing it.   So far as can be gathered from the details given of the cost of the work alleged to have been done by the city, the part paid for by the prosecutors, formed the great bulk of that for which they are assessed.

Had all these proceedings been entirely unobjectionable in form, there is the utter absence of meritorious grounds for the enforcement of this assessment against such of the prose-

cutors as had already paid for the work which the city claims to have done, but which it did not do.

Both of these assessments should be set aside as to all the prosecutors, with costs, and no order be made for any re-assessment.