STATE, BERNARD McKEVITT ET AL., PROSECUTORS, v. MAYOR AND COMMON COUNCIL OF THE CITY OF HOBOKEN.

1. Unless restrained by express words, the authority to impose special assessments for municipal improvements is a continuing power.

2. A sewer in the city of Hoboken, for which an assessment had been

levied, by reason of the uneven sinking of newly-made land, ceased to conduct sewage toward its outlet, but allowed its contents to flow out upon low lands and become a nuisance. *Held*, that an assessment for a new sewer to do the work which the old one was intended to do was legal.

3. No person whose lands are not so placed as to permit of a present connection with the sewer can be assessed for benefits.

On *certiorari.*

This writ brings up for review an assessment made upon the property of the prosecutors in the city of Hoboken for the expenses incurred in constructing a sewer in Clinton street, between Second and Third streets.

Argued at February Term, 1883, before Justices DEPUE, SCUDDER and REED.

For the prosecutors, *J. F. Minturn.*

For the defendants, *S. A. Besson.*

The opinion of the court was delivered by

REED, J.   The first objection urged against the legality of this assessment is that the charter of Hoboken (*Pamph. L.* 1855, § 6,) provides that the common council shall have power to build sewers in public streets, provided the owners of two-thirds of the property upon the street shall petition therefor in writing, and that there was not such a petition presented to common council for the construction of this sewer. The contention is that while the petition, upon its face, purported to have been signed by the requisite number of owners, yet that in one instance it was signed by the husband of the legal owner, and in another instance the name of a deceased owner was signed by his widow.

However essential a legally-signed petition may have been as the foundation for the exercise of the power to build this sewer, yet a person whose rights were affected by the act of

the common council under this petition could not remain quiescent until a large sum of money had been expended by color of it and then invoke the aid of the law to throw the burden upon the entire community.

The law requires diligence, and the party who stands by and sees a work of this character in the course of construction, attended by the incurrence of indebtedness or the expenditure of money, waives his right to take those objections, which, if promptly interposed, would have stopped the work and saved the expense. *Green* v. *Jersey City,* 13 *Vroom* 118, 123 ; *Bowne* v. *Logan,* 14 *Vroom* 421 ; *State, Hoboken Land and Improvement Co., pros.,* v. *Hoboken,* 7 *Vroom* 291.

By force of the rule established by these and a number of other cases, the prosecutor is held to be precluded from attacking any step in these proceedings preceding the execution of the work.

The next objection is that the lands assessed had been previously assessed for the construction of a sewer in the same street.

It appears from the testimony that some years before, a wooden sewer had been constructed along this section of Clinton street.

It also appears that the land in which it was placed was built up by filling in, and that it sank unevenly, carrying down the sewer with it, so that instead of draining into the Third street sewer, as was the design, it conducted a part of its contents towards First street, and another portion of its contents found its way out on low ground.

To prevent the contents of the sewer on Third street from running into this sewer, there was placed an obstacle at the junction of the sewers.

The Third street sewer became, by reason of the settling of the soil, a cesspool and a nuisance, and was of no practical use to the property-owners along its line. The act of draining into it perpetuated the noxious character of the drain, and it was requisite that it should be replaced and repaired, or a

new box substituted for it, before sewage could be carried into the proper channels.

As I gather from the testimony, the probable expense of raising and repairing it would have been as great as that incurred by building the present box sewer.

The building of the present sewer was clearly within the power of the city under the terms of the charter, and the fact that once a similar improvement had been placed in the same street, for the construction of which an assessment had been made, did not, under this condition of fact, deprive the city of the power to impose special assessments upon the adjoining owners for benefits arising from this sewer. Unless restrained by the charter, under which the authority to impose special assessments is granted, that power is not spent when one improvement is made. It is a continuing power, and whenever its exercise becomes again necessary by reason of the destruction or inutility of the original improvement, it may be again exerted. *Dillon's Mun. Corp.*, vol. 2, §§ 686, 780; *Green v. Hotaling*, 15 *Vroom* 347.

The objections urged against the manner in which the assessment, was actually laid, are two : first, that the respective lots are assessed by lineal measurement and not by a calculation of the amount which each lot would be benefited ; second, that other property benefited was not assessed.

In regard to the first objection it may be said that an assessment made by measurement may arrive at the amount of actual benefits. If the lots are of similar size, as these seem to have been, of similar characteristics, and here there is nothing to show the contrary, then if the property along the line of the improvement is specially benefited to the amount of the cost of the improvement, no other rule could be adopted than that which obtained in this case. A frontage assessment is not necessarily invalid, and it seems to me that there is nothing in this case to exhibit such dissimilarity in the properties as to lead to the conclusion that the uniformity in the amounts assessed is erroneous.

In regard to the second objection, it appears that certain

owners whose property did not lie upon the line of this improvement, or contiguous thereto, but between whose properties and this sewer connections have been made, were not assessed.

The city, it seems, either by special assessment or at public expense, constructed box sewers in Clinton street, between First and Second streets, in Second street and in Grand street, and these all led into the sewer for which the present assessment is laid. Connections with these branch sewers were made by certain owners of property contiguous to them.

Now, it is clear that until these properties were placed in a position by which they could connect through these branch sewers with the present sewer, they could not be assessed for the cost of the latter improvement. *State, Kellogg, pros., v. Elizabeth,* 11 *Vroom* 274.

When the present assessment was in fact made does not appear, but it was filed on August 9th, 1880. A careful examination of the testimony fails to show that any of these branch sewers were constructed at the time this assessment was made, while it is probable that they were built subsequently.

Even if it had appeared that the connection of the property of an unassessed owner was through a branch sewer, built as a distinct improvement, for the building of which the property was liable to an assessment for the benefits received from the entire drainage system, I do not say that then the commissioners would have been bound to impose upon such property a part of the cost of this improvement.

It is unnecessary to say what action such a condition of affairs would have demanded of the commissioners.

It is sufficient to say that at the time when this assessment was made there appears to have been no omitted property which was so connected with this sewer as to have been liable to the imposition of any assessment whatever.

The assessment is affirmed, with costs.