The appellant filed its petition August 31st, 1927, in the Circuit Court of Lee County as provided by Section 3296, etseq., Revised General Statutes of Florida, 1920, seeking to validate street improvement bonds in the sum of $1,250,000.00, issued pursuant to Chapter 12719, Acts of 1927, Laws of Florida, contemporary with the filing of the petition to validate, order was made on the State's Attorney and the tax payers affected requiring them to appear and show cause why the bonds should not be validated.
On the return day named in the petition the State's Attorney filed his pro forma answer announcing that no defense to the validation petition would be offered by the State of Florida. R. A. Henderson, Jr., a citizen and tax payer, intervened and filed his demurrer to the petition to validate, which was overruled. Katie Lloyd Guynne, Lucious C. Curtright, Carrie W. Langford, J. S. Wallis, Charles C. Pursley, David W. Ireland and others as citizens and tax payers filed their several answers resisting appellant's petition to validate, a demurrer being incorporated in each of said answers. Motions to strike certain portions of said answers were granted in part and overruled in part.
October 10, 1927, Southern Paving Construction Company, the successful bidder for, and having entered into contract with appellant to make the street improvement that the bonds sought to be validated were issued to pay for, filed its petition for leave to intervene and be made a *Page 711 
party to the proceedings to validate. That petition was denied.
On motion of defendants below (appellees here), the chancellor required the petitioner to file with and make a part of the proceedings to validate a copy of the plans and specifications of the proposed street improvements. On November 4, 1927, after full hearing on the pleadings and testimony duly taken the chancellor entered his final decree denying the prayer of appellant's petition to validate its bonds in the amount stated. The appellant, City of Fort Myers, entered its appeal from said final decree.
It is first contended that the motion to strike each and every the answers to the petition to validate should have been sustained in toto because they question the legality of the special assessments laid for the purpose of paying principal and interest on the bonds sought to be validated which cannot be done in a proceedings of this kind.
The law seems well settled that a special assessment for local improvements cannot be collaterally attacked. Loeb v. Columbia Township Trustees, 179 U.S. 472, 21 Sup. Ct. Rep.; City of Gladstone v. Throop, 71 Fed. Rep. 341; Burlington Savings Bank v. City of Clinton, Ia., 106 Fed. Rep. 269; Board of Com'rs Franklin County, Ohio, v. Gardnier Savings Inst., 119 Fed. Rep. 36; Bass v. City of Casper, 28 Wyo. 387, 205 Pac. Rep. 1008; 208 Pac. Rep. 439, Text 1016; Moore v. City of Yonkers, 149 C. C. A. 31, 235, Fed. 485, 9 A. L. R. 590; Gracen v. City of Savannah, 142 Ga. 141, 82 S.E. Rep. 453; Hamilton on Special Assessments, 726; Smith on Modern Law of Municipal Corporations, Vol. 2, Section 1198, note 384, 34 Corpus Juris 519. From these cases we deduce the rule that special assessments imposed for the purpose of paying the interest and principal on municipal bonds which are by law a direct obligation of the municipality cannot generally be attacked in a proceeding *Page 712 
to validate. The reason for this rule is that the validity of such bonds depends on the power of the municipality to issue and pledge its resources and credit to protect them. If issued as directed under the terms of a valid statute they may be validated irrespective of the regularity of the assessments imposed to reimburse the city for liquidating them. A different rule would apply where the validity or status of the bond is made to depend on the validity of the assessment rather than the power of the municipality to issue them. Cases where the city merely agrees to collect and disburse the proceeds of improvement certificates authorized for specific purposes are not analagous to this and have no place in this discussion.
The Legislature evidently had in mind the foregoing rule when it enacted the City Charter of the City of Fort Myers, because Section M of Section Fifty, authorizing the bonds here brought in question in effect provides that if any special assessment made to defray the whole or any part of the street improvement made thereunder shall be in whole or in part vacated, annulled or set aside, if the city commission shall be satisfied that any such assessment is so irregular or defective that the same cannot be enforced or collected, or if the commission shall have omitted to make the assessment when it might have done so, it may make a new assessment for the whole or any part of any improvement and if the second assessment shall be annulled it may make other and additional assessments until a valid assessment is made. In this provision a direct and not a collateral attack on the assessments is contemplated if their validity is questioned.
In our view the serious questions presented here are those pertaining to the legality of the proceedings in the matter of issuing the bonds and not those affecting the validity of the special assessments. *Page 713 
In Weinberger v. Board of Public Instruction of St. Johns County et al., 93 Fla. 470, 112 So.2d Rep. 235, this Court, speaking through Mr. Justice STRUM, held that in a bond validation proceeding prosecuted under Section 3296, Revised General Statutes of Florida, any matter or thing affecting the power or authority of a municipality to issue bonds or the regularity or legality of their issue, including questions of both law and fact, in so far as those matters or things could be lawfully prescribed, regulated, limited or dispensed with by the Legislature in the first instance, or subsequently cured by a validating act, may be put in repose by a decree rendered pursuant to said Section 3296 et seq., Revised General Statutes of Florida, 1920. So, also, may constitutional rights or privileges which are designed solely for the protection of the property rights of the individual concerned and which he may waive or with reference to which he may estop himself or as to which the Legislature may lawfully limit the period of time within which such right or privilege may be exercised. Thompson v. Town of Frostproof, 89 Fla. 92, 103 So.2d 118. If the resolution of other essential proceedings on which the bonds are based is a nullity because of conflict with organic law this rule as to repose would not apply. Weinberger v. St. Johns County, supra.
The bonds under consideration were issued by authority of Section Fifty of Chapter 12719, Acts of 1927, Laws of Florida, Sections B, C and J of which are as follows:
"Section B. When the Commission may determine to make any public improvement or repairs in streets or districts and defray the whole or any part of the expense thereof by special assessment, the Commission shall so declare by resolution, stating the nature of the proposed improvement, designating the district or districts, street or streets to be so improved, what part or portion of the *Page 714 
expense thereof is to be paid by special assessment, the manner in which said assessment shall be made, when said assessments are to be paid, what part, if any, shall be apportioned to be paid from the general improvement fund of the city; said resolution shall also designate the lands upon which the special assessment shall be levied; and in describing said lands it shall be sufficient to describe the lots and lands deemed to be specially benefited abutting upon and contiguous to the contemplated improvement, as: 'All lots and lands adjoining and contiguous, or bounding and abutting upon such improvement.' Such resolution shall also state the total estimated cost of the improvement."
"Section C. At the time of the adoption of the resolution, as provided for in Section B of this section, there shall be on file with the City Clerk of Fort Myers, plans and specifications, with the estimated cost of the proposed improvements, which plans and specifications and estimate shall be open to the inspection of the public."
"Section J. After the equalizing, approval and confirmation of the levying of special assessments for street improvements, as hereinbefore provided by Section H of this section, and as soon as a contract for said street improvement has been finally let, the Commission of the City of Fort Myers may, by resolution, issue bonds pledging the full faith and credit of said city to an amount not exceeding 70 per cent of the proportionate part of the cost of said street improvement to be paid by special assessment, and the estimated cost of said street improvement, as stated in the resolution provided for in Section B, shall be used as a basis of calculation in determining 70 per cent of the proportionate part of the cost of said street improvement to be paid by special assessment; such bonds shall be general obligations of the City of Fort Myers and if special *Page 715 
assessments be not imposed and collected in respect of the improvement in season to pay the principal and interest of said bonds the Commission of said city shall levy and collect on all taxable property in the city a tax sufficient to pay such principal and interest as the same respectively become due and payable. All bonds issued under the provisions of this section shall be excluded from any limitation of bonded indebtedness prescribed by the charter of the City of Fort Myers, or by general law. Said bonds shall be issued upon the adoption of a resolution by the Commission of the City for the issuing thereof, without submitting the question as to the issuance of said bonds to a vote of the electors of said city."
The contents of the resolution determining to make public improvements as required in Section B and the resolution to issue bonds as required in Section J as above quoted must determine the legality and regularity of any bonds issued thereunder. The specifications enumerated in Section B and J not only go to the legality and regularity of the bonds in question but to the power of the municipality to issue them as well and are therefore necessary jurisdictional prerequisites to their validity. Whether or not these resolutions meet the requirements of Sections B and J may be properly tested in a proceeding to validate. Weinberger v. Board of Public Instruction of St. Johns County, supra. As an additional prerequisite to the bond resolution provided for by Section J it is necessary that the provisions of Section H of Section Fifty be complied with. Section H of Section Fifty is as follows:
"Section H. Special assessments for the improvement, hard-surfacing, re-surfacing, paving and re-paving of any street or streets, or sidewalk or sidewalks, and for laying and constructing storm sewers, manholes, catch basins and accessories, shall be payable by the owners of the property *Page 716 
abutting on said street or streets or other benefited properties assessed for said improvement at the time and in the manner stipulated in the resolution providing for said improvement and said special assessments shall be and remain liens superior in dignity to all other liens, except until paid, from the date of the assessment upon the respective lots and parcels of land assessed, and shall bear interest at the rate of 8 per cent per annum, and may be, by the resolution aforesaid, made payable in ten equal yearly installments, with accrued interest on all deferred payments unless paid within thirty days after said assessment shall stand approved and confirmed, as provided in the preceding section."
The resolution of the City Commission to make public improvements as authorized by Section B and the bond resolution as authorized by Section J are both grounded on the special assessments and the apportionment of benefits as authorized by Section A of Section Fifty, which is as follows:
"Section A. Special assessments against property deemed to be benefited by local improvements, as provided herein, shall be assessed upon the property specially benefited by the improvement in proportion to the benefits to be derived therefrom, said special benefits to be determined and prorated according to the front footage of the respective properties specially benefited by said improvement, or by such other method as the Commission may prescribe."
We think from these requirements it is mandatory that before the resolution authorizing public improvements as provided in Section B can be legally adopted the City Commission must have determined that benefits will accrue to the property improved, the amount thereof, how such benefits will be prorated, and that special assessments will be made in proportion to said benefits as directed by Section *Page 717 
A. It is further mandatory that the total estimated cost of the improvements as required by Section C shall be on file with the City Clerk of the City of Fort Myers at the time said resolution is adopted. It is also our opinion that the "estimated cost" of the improvement as referred to in Section C as here quoted does not contemplate or have reference to a mere fancied, haphazard or speculative estimate, but that it has reference to a reasonable bona fide estimate predicated on the plans and specifications on file with the City Clerk at the time of the adoption of the resolution for the public improvement. It may not be the actual estimate made by the builder nor the estimate or bid accepted from the contractor, but it should ordinarily approximate these. Lambert v. Sanford,55 Conn. 437, 12 A. 519; People ex rel. Van Buskirk v. Clark, 37 Hun. (N.Y.) 201; McCormack v. State, 42 Neb. 866, 61 N.W. 99; Webster's New International Dictionary. Words and Phrases, Vol. 2 (second series), 333.
The resolution of the City Commission declaring its purpose to make the public improvements as authorized by Section B was adopted June 3, 1927. It does not show on its face that the "estimated cost" of the improvements was a reasonable bona fide
estimate predicated on the plans and specifications on file with the City Clerk at the time the resolution was adopted. The answers of the respondents, citizens and tax payers not only allege that the estimated cost of the improvements was not a reasonable and bona fide estimate so computed, but that it was arrived at by arbitrarily adding forty-four per cent to the estimated cost, making the estimated cost recited in the resolution one hundred and forty-four per cent of the actual estimated cost. The answers also allege that the estimated cost was padded in this manner in order that seventy per cent of the padded estimate would cover the entire cost of the *Page 718 
improvements for which bonds could be issued as authorized by Section J. For this reason the chancellor found the resolution of June 3, 1927, void and his finding is amply supported by the evidence. The estimated cost of the improvement and the resolution of June 3, 1927, determining to make said improvements being void, the resolution of August 29, 1927, providing for the bond issue pursuant to Section J was also void because it was predicated on the estimated cost of the improvements and the resolution of June 3, 1927, determining to make them, both of which were unauthorized.
It is next contended that the resolution of June 3, 1927, does not apportion the benefits to be derived from the public improvements as provided by Section A of Section 50, Chapter 12719, Acts of 1927.
Section A of Section Fifty, Chapter 12719, Acts of 1927, is quoted at large in this opinion. In effect it provides that special assessments may be imposed on the property benefited by the local improvements in proportion to the benefits derived therefrom and that such benefits shall be determined and prorated according to front footage or by any other method that the Commission may prescribe. The front-foot rule has generally been adopted in this country to prorate benefits from local improvements, though under said Section A of Section Fifty they may be prorated according to value, superficial area, districts, zones, front footage or by any other fair or equitable plan that the Commission may elect. Provided, that in no instance shall the amount assessed against the property benefited exceed the amount of benefits accruing to it.
The resolution of June 3, 1927, resolves to make "public improvements of paving and to construct concrete curb and gutter, together with the necessary storm sewers, catch basis, manholes and accessories." It also determined to *Page 719 
prorate the benefits to be derived from such improvements by the front-foot rule. Section Fifty of Chapter 12719, Acts of 1927, being the Act under which the commissioners proceeded, commands that in no instance shall the amount assessed against the benefited or abutting property exceed the amount of the benefits estimated to accrue to said property. The resolution on its face does not show any specific finding of benefits to the property improved or that such benefits were equal to or less than the special assessments. We think such a finding was mandatory.
Inspection of the record discloses that it was determined to make the improvements in question by streets, that in many instances the street paving and the construction of storm sewers, catch basins, manholes and accessories was done on different and widely separated streets of the city. The cost of the entire program was ascertained by: First, dividing the total cost of paving each street by the sum of the front footage on both sides for the unit cost and this quotient multiplied by each owner's front footage gave the amount of his paving assessment. Second, the entire cost of storm sewers, catch basins, manholes and accessories was divided by the sum of the front footage on both sides of the paved streets, this quotient multiplied by each owner's front footage gave the amount of his storm sewer, catch basin, manhole and accessory assessment. The sum of said paving and storm sewer, catch basin, manhole and accessory assessments gave each owner's total assessment. The record also discloses that the paved streets and the storm sewers, catch basins, manholes and accessories were in many instances remote from each other, were disconnected in widely separated parts of the city and that the storm sewers, catch basins, manholes and accessories were of various and sundry sizes, dimensions and costs; yet all assessments of costs and determination of benefits from said *Page 720 
improvement was charged by the front footage against the streets paved without reference to the location, size, volume of service or cost of the storm sewers, catch basins, manholes, and accessories.
In an improvement program of the magnitude and variety of that involved here, there should have been a specific finding of benefits both as to paving on the one hand and as to storm sewers, catch basins, manholes and accessories on the other. In other words, where there are several unconnected and distinct constructions or programs for improvement purposes there should be an adjudication or finding of benefits as to each program separately. It is true that storm sewers and catch basins are in the main auxiliaries to drainage and they may usually be constructed along with and become a part of a paving program. When this is the case benefits as to them may be appraised and assessed in connection with benefits accruing from the paving program; but when the paving program and the storm sewer, catch basin, manhole and accessory program are in many instances remote and unconnected with each other as they appear to be in the instant case, there should be an adjudication of benefits as to each separately. When this is done benefits inuring to the property adjacent to and benefited by the paving program should be prorated to it according to the front footage; benefits inuring to the property adjacent to and benefited by the storm sewer, catch basin, manhole and accessory program should be prorated to it according to the front footage with reference at all times to the volume of service, the size or dimensions of the sewer and whether or not the service is direct or incidental. Assessments for the cost of a paving program can be justified only on the basis of special and positive benefits accruing to the lands improved, while assessments for the cost of a storm sewer program may be justified on the basis of *Page 721 
direct, indirect, or incidental benefits. The test being whether or not lots and lands remote from the storm sewer are connected with or will drain into it. Thomas v. Gain, 35 Mich. 156; Auditor General v. O'Neill, 143 Mich. 343, 106 N.W. Rep. 895; Meggott v. City of Eau Claire, 81 Wis. 326, 51 N.W. Rep. 566. We do not hold that instances could not arise in which the physical and other conditions would be such that it would be fair and equitable to assess benefits and costs for a paving program and a storm sewer, catch basin, manhole and accessory program on identical and abutting lands as was done here, but we do not think that this case falls in that class.
In some jurisdiction it is the rule that special or peculiar benefits actually accruing and determined after a notice and hearing is essential to the validity of a special assessment while in other jurisdictions it is held that a presumption of special benefits founded upon a legislative declaration thereof is sufficient to justify an assessment in proportion to front footage or according to any other fair and reasonable rule. Dillon on Municipal Corporations (5th ed.), Vol. 4, page 2615. The statute under consideration is controlled by the former rule.
Special assessments for local improvements although resting on the taxing power are distinguishable in many respects from a general tax imposed for State, county or municipal purposes. The fair and just foundation on which special assessments for local improvements rest is special benefits accruing to the property benefited, that is to say, benefits received by it in addition to those received by the community at large. Atlantic Coast Line v. City of Lakeland, decided August 1, 1927, rehearing denied January 4, 1928. Dillon on Municipal Corporations (5th ed.), Vol. 4, 2566; Baltimore v. Johns Hopkins Hospital, 56 Md. 1; McMillan v. Butte, 30 Mont. 220, Text 225, 76 Pac. Rep. *Page 722 
203; Hanscom v. Omaha, 11 Neb. 37; Cain v. Omaha, 42 Neb. 120; 60 N.W. Rep. 368; Barnes v. Dyer, 56 Vt. 469; Oshkosh City Ry. Co. v. Winnebago County, 89 Wis. 435, 61 N.W. Rep. 1107.
When the method of prorating benefits is adopted and the amount of benefits determined it then becomes the duty of the commission or other assessing body to make assessments on all property specially benefited by the particular improvement according to the exceptional benefit each lot or parcel of property actually and separately receives. Judge Dillon approves this method as right in principle and the most just in its practical workings. Dillon on Municipal Corporations (5th ed.), Vol. 4, page 2568.
Many elements enter into the question of determining and prorating benefits in a case of this kind. They are physical condition, nearness to or remoteness from residential and business districts, proximity to the water, desirability for residential or commercial purposes, and many others peculiar to the locality where the lands improved are located. No system of appraising benefits or assessing costs has yet been devised that is not open to some criticism. None have attained the ideal position of exact equality but if assessing boards would bear in mind that benefits actually accruing to the property improved in addition to those received by the community at large must control both as to benefits prorated and the limit of assessments for cost of improvement the system employed would be as near the ideal as it is humanly possible to make it. Witman v. City of Reading, 169 Pa. St. 375, 32 Atl. Rep. 576; Hammett v. Philadelphia, 118 Pa. St. 535, 12 Atl. Rep. 174. For all the record here discloses the rule as announced in the preceding paragraph was completely ignored. The assessments seem to have been predicated on the cost of the improvement rather than on the amount of benefits *Page 723 
prorated and if any benefits were determined they were predicated on assessments rather than actual increase in value to the lands improved. We think it imperative under the applicable statute that there must have been a specific finding of benefits that the assessments made were not in excess of the benefits found and that any assessment imposed without regard to the benefits found is arbitrary and invalid. Walsh v. Barron, 61 Ohio St. 15, 55 N.E. Rep. 164; Doughten v. Camden,72 N.J.L. 451, 63 Atl. Rep. 150; Simmons v. City of Passaic,42 N.J.L. 524; Cronin v. Jersey City, 38 N.J.L. 410; Signer v. Fuller, 34 N.J.L. 227; Essen v. Common Council of City of Cape May, 77 N.J.L. 361, 72 Atl. Rep. 49; Hutcheson v. Storrie, 92 Tex. 685, 51 S.W. Rep. 848; Kettle v. Dallas,35 Tex. Civ. App. 632, 80 S.W. Rep. 874.
The statute brought in question fully warrants and we are planting our decision on safe grounds in holding that it must appear that the assessments are not in excess of the benefits conferred upon the land. Kingsland v. Township Union, 37 N.J.L. 268; Van Houten v. Paterson, 37 N.J.L. 412; Essen v. Common Council of the City of Cape May, 77 N.J.L. 361, 72 Atl. Rep. 49; Butler v. Montclair, 67 N.J.L. 426, 51 Atl. Rep. 492.
With reference to the construction of storm sewers, catch basins, manholes and accessories in addition to what we have said in the preceding paragraph it appears that benefits were prorated and assessments were made for them solely against the lots and lands abutting the streets to be paved regardless of the location of such storm sewers, manholes, catch basins and accessories, that is to say that on many of the streets to be paved no storm sewers, manholes, catch basins and accessories are to be constructed and that in many instances storm sewers, manholes, catch basins and accessories are to be constructed on streets which are not to *Page 724 
be paved, yet on such streets not to be paved no benefits are prorated and no assessments are made for said improvements, but the improved streets are made to bear the entire expense thereof. We regard such impositions as arbitrary and invalid and any attempt to enforce them as in disregard of all principles of justice and equity.
In Rich v. City of Chicago, 152 Ill. 18, 38 N.E. Rep. 255, it was held that in a special assessment for a sewer it is not essential that the property assessed should be contiguous to or abutting upon the improvement, if it be presently and specially benefited. Evidence that the market value of the property will be improved is sufficient to establish the benefit. It has also been held that assessments for sewer cannot be sustained if private property intervenes so that the owner of the property assessed cannot make use of the sewer. State ex rel. McKune v. Dist. Court of Ramsey Co., 90 Minn. 540, 97 N.W. Rep. 425; Clarke v. Dunkirk, 75 N.Y. 612; People v. Kingston, 53 N.Y. App. Div. 58. In New Jersey it is held that land which cannot be drained into a trunk sewer until connecting laterals are built cannot be assessed for the cost of the trunk sewer until the laterals are constructed. Kellog v. City of Elizabeth,40 N.J.L. 274; King v. Reid, 43 N.J.L. 186, text 192; McKevitt v. Hoboken, 45 N.J.L. 482; Morris v. City of Bayonne, 53 N.J.L. 229, 21 Atl. Rep. 453. In Illinois before property which is not on the line of the sewer can be assessed for its construction, a drainage district must be formed and provision must be made securing to such property the privilege of draining into the sewer in the future development of the system Edwards v. Chicago, 140 Ill. 440, 30 N.E. Rep. 350; Clark v. Chicago,214 Ill. 318, 73 N.E. Rep. 358; Snydacker v. West Hammond, 225 Ill. 154, 80 N.E. Rep. 93. Property which does not front upon the sewer may be assessed if it is within the drainage district, *Page 725 
and if provision is made for securing to the lands the right to drain into the sewer. Mason v. Chicago, 178 Ill. 499, 53 N.E. Rep. 354. Where a sewer tax is to be borne by the adjacent property owners, it should be imposed only upon those individuals who can use the sewer and in proportion to the benefits received from its construction. Gilmore v. Hentig,33 Kan. 156, 5 Pac. Rep. 781. From these citations and a farrago of others we glean that every improvement program is fraught with its peculiar difficulties and must stand or fall on the result of the solution of these difficulties.
It follows that there should have been a determination and proration of benefits to all streets not in the paving program but on which storm sewers, manholes, catch basins, and accessories were to be constructed and assessments should have been made against them in the same manner they are here directed to be made, or there should have been an affirmative showing that the paving and the storm sewer, manhole, catch basin, and accessory program were one and the same and that the lands on the paved streets should properly bear the entire burden of the paving and the storm sewer, catch basin, manhole and accessory improvement.
Assessments on the basis of benefits by the front-foot rule may not apply to the construction of sanitary sewers under the police power. Chicago, Milwaukee St. Paul Ry. Co. v. City of Janesville, 137 Wis. 7, 118 N.W. Rep. 182. But in other instances they have generally been approved throughout the country. Dillon on Municipal Corporations (5th ed.), Vol. 4, page 2534 and cases cited; Walters v. City of Tampa, 88 Fla. 177, 101 So.2d 227; Anderson v. City of Ocala, 67 Fla. 204, 64 So.2d 775; Atlantic Coast Line R. R. Co. v. City of Lakeland, decided August 1, 1927. Rehearing denied January 4, 1928. The rule will not be applied *Page 726 
or approved in cases where on account of peculiar or extraordinary facts the basis on which it rests does not exist, and to require the abutting owner to make the improvements would amount to confiscation of his property without compensation. James v. Louisville, 19 Ky. Law. Rep. 447, 40 S.W. 912; Frantz v. Jacob, 88 Ky. 525, 11 S.W. Rep. 654; Preston v. Rudd, 84 Ky. 150; Broadway Baptist Church v. McAtee, 8 Bush (Ky.) 508.
In Atlantic Coast Line R. R. Co. v. City of Lakeland,supra, this Court said that where the special or peculiar benefits are substantially equal to the charge, the legislative authority in apportioning the cost to be borne by the property specially benefited may impose the entire reasonable and proper cost of the improvement upon such property even though a secondary or incidental benefit may also result to the public. If, however, the situation is reversed and the incidental benefit results to the property improved and the primary benefit to the public, to require the abutting property to bear the entire expense would amount to an arbitrary and unwarranted servitude which cannot be imposed. In the instant case, it is shown that some of the streets to be paved are main thoroughfares through the City of Fort Myers, some of them fifty-four and some thirty-six feet wide. It is also shown that some of the abutting properties have assessments on them that amount to confiscation. To require the adjacent property to bear the entire cost of paving streets of such width and at such expense under the showing made here would be an unlawful invasion of the organic property rights of the owners. As was said by Church, C. J., in Guest v. City of Brooklyn, 69 N.Y. 506
:
"The right to make a public street is based upon public necessity, and the public should pay for it. To force an expensive improvement (against the consent of the owners, *Page 727 
or a majority of them) upon a few property owners against their consent, and compel them to pay the entire expense under the delusive pretense of corresponding specific benefit conferred upon their property is a species of despotism that ought not to be perpetuated under a government which claims to protect property equally with life and liberty. Besides its manifest injustice, it deprives the citizen practically of the principal protections (aside from constitutional restraints) against unjust taxation, viz., the responsibility of the representative for his acts to his constituents."
Municipal officers and boards under statutes like the one under review have no more delicate or responsible duty imposed on them than that of appraising benefits and laying assessments for public improvements. The great majority of our people are not only eager but insistent in their demands for highways and other improvements that cost them nothing. Public improvements should at all times be dictated by public necessity rather than the agitation of those who have some personal motive to serve or those who bear little or no part of the expense of the improvement. When such a course is pursued the law providing for them becomes "certain in meaning, just in precept, convenient in execution, agreeable to the form of government and productive of virtue in those who live under it," otherwise it will be fraught with ruinous and oppressive burdens which cannot legally be imposed. It is true that every case of this kind must stand or fall on the facts peculiar to it, but the discretionary prerogative of the City Commission to make street improvements must not be undertaken under conditions that impose an excessive burden on or that amount to spoilation of one's property.
It is next contended that the notice dated June 8, 1927, for hearing complaints of property owners as to assessments *Page 728 
against them was insufficient to put them on notice of the equalization of assessments for storm sewers, catch basins, manholes and accessories.
The heading of the assessment roll as published is as follows:
"Assessment roll of special assessments for cost of paving certain streets in the City of Fort Myers, Florida, as provided in resolution passed by the Commission of the City of Fort Myers, June 3, 1927."
The notice to property owners of the time and place where complainants as to assessments against them may be heard is as follows:
"Notice of hearing complaints of property owners on assessments for cost of special assessments for street paving in the City of Fort Myers, Florida, and assessment roll thereto attached."
Inspection of the heading of the assessment roll and the notice to property owners discloses that no assessments are mentioned except those for paving. All references to storm sewers, catch basins, manholes and accessories being omitted. We think that under Section F of Section Fifty, City Charter of the City of Fort Myers, by virtue of which the assessment roll and the notice to property owners was promulgated the notice was a jurisdictional prerequisite to a valid assessment roll and since assessments were being made for paving, storm sewers, catch basins, manholes and accessories as well as paving, the notice was insufficient for its purpose in that it was a substantial departure from the provisions and purpose of the statute requiring it. City of Jackson v. Tucker, 136 Miss. 787, 101 So.2d Rep. 708; City of Mobile v. Mobile Light and Ry. Co.141 Ala. 442, 38 So.2d 127. In re Delaware and H. Canal Co. 8, N Y S. 352.
The chancellor also found that the plans and specifications, resolution of June 3, 1927, and the assessment roll *Page 729 
provided for paving, storm sewers, catch basins, manholes and accessories in and over certain lands in the City of Fort Myers where no streets or easements therefor exist and it is not shown that said lands can ever be acquired for street purposes.
In Thompson v. Town of Frostproof, 89 Fla. 92, 103 So.2d 118, this Court held that bonds cannot be legally voted to improve streets where no streets in law exist and it is not made to appear that they ever can or will exist. We also held that this was a proper question to be raised in a bond validation proceeding. It may be possible in the instant case to segregate the proposed streets where none may ever exist from the streets that do actually exist, but the record shows that large sums were assessed to improve these proposed streets, which was illegal because predicated on benefits not accrued and which may never accrue.
For the reasons announced in this opinion the decree of the chancellor is affirmed.
Affirmed.
ELLIS C. J., AND WHITFIELD, STRUM, BROWN AND BUFORD, J. J., concur.