## David Edwards *et al.*

*v.*

## The City of Chicago.

*Filed at Ottawa March 24, 1892.*

1. SPECIAL ASSESSMENT—*error to confirm, against lands not benefited.* Where the evidence introduced on a proceeding to confirm special assessments fails to show that the lands of the objectors will be specially benefited by the construction of a sewer which does not reach such lands, and which are used for farming purposes, it will be error to confirm the assessments made upon such lands.

2. SAME—*for benefits by future improvements.* No assessment can be made upon lands lying beyond the terminus of a proposed sewer for benefits to accrue thereafter by an extension of the sewer.

3. SAME—*on lands lying beyond the benefits of the improvement.* Where an ordinance for the construction of a sewer contains no provision allowing property holders of lands beyond its terminus to use the same for draining their lands, there can be no legal assessment of such lands to aid in the construction of such sewer, as land not benefited by a proposed improvement can not be specially assessed therefor.

APPEAL from the County Court of Cook county; the Hon. FRANK SCALES, Judge, presiding.

Mr. FRANK J. CRAWFORD, for the appellants:

The assessment of farming lands for the construction of a sewer which does not reach them, and will not be benefited without future action in extending the same, is unauthorized and illegal. *Hutt* v. *Chicago,* 132 Ill. 352.

Special assessments are based upon benefits to the property charged. *Sterling* v. *Galt,* 117 Ill. 11; *Railroad Co.* v. *Decatur,* 126 id. 98.

The evidence in the case fails to show that the lands of the appellants will be benefited by the proposed improvement, and therefore they should not be assessed.

Mr. C. A. DIBBLE, and Mr. JOHN S. MILLER, for the appellee.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

This is an appeal from a judgment of the county court of Cook county, confirming a special assessment levied by the city of Chicago to pay for a sewer. The cost of the improvement was estimated at $106,134,—$18,770.78 of which was assessed to the city, and the balance, $87,363.26, upon property assessed as specially benefited. Of this last amount, $8552.92 was assessed against lands of the appellants, who filed objections to the confirmation of the assessment roll returned by the commissioners, in the court below. These objections being overruled and said assessment confirmed, they prosecute this appeal. They resisted the assessment, on the hearing, mainly on the ground that their lands assessed for special benefits to accrue by the proposed improvement, would not be benefited thereby, and it is upon that ground that the judgment of the county court is sought to be reversed here.

The ordinance authorizing the improvement provides for a brick sewer, to be laid in the center of Belmont avenue, "from its outfall into the north branch of the Chicago river to the west line of Milwaukee avenue." The dimensions and structure

of the work are prescribed, and it is specified that twenty-six man-holes, and ninety catch-basins upon the same, of certain dimensions, shall be built, to be located "at points to be directed." Section 2 of the ordinance provides that the said improvement shall be paid for by special assessment. The commissioners appointed to make the assessment, in apportioning and assessing the amount found to be of benefit to property, assessed the lots, blocks, tracts and parcels of land one-quarter of a mile on either side of said Belmont avenue, from the river westward,—a distance of nearly four miles. Those of appellants included in the assessment are all west of the western terminus of said sewer, and wholly disconnected therewith, a part of them being nearly three miles west of Milwaukee avenue. All of these lands, though within the present city limits, are used exclusively for agricultural purposes, and are situated in a rural district. Belmont avenue west of Milwaukee avenue is in fact but a country road, passing through farm lands, and there is no claim that the lands of appellants bordering thereon, which were assessed, are in any proper sense city property.

It need scarcely be said the proposed improvement, as authorized by said ordinance, can afford appellants no facility whatever for discharging sewage from these lands. It is conceded it will not unless the work shall be extended westward by future action of the city. It must also be admitted that no assessment could be made against property, in this proceeding, for benefits to accrue hereafter by an extension of said sewer. (*Hutt et al.* v. *City of Chicago*, 132 Ill. 352.) But, independently of the consideration of such future extension, the evidence in this record wholly fails to show that appellants' lands will be benefited, unless it be in the way of surface drainage, and we are unable to discover, even from the testimony introduced by the city, in what manner a sewer like that described in the ordinance will improve such drainage. There is nothing in that evidence tending to show that,

there is at present any obstruction to the flow of water from said lands to the river which will be overcome by the contemplated sewer. While it is shown that the surface water from the west naturally flows to the north branch of the Chicago river, along Belmont avenue, it is also shown that side ditches have heretofore afforded ample facilities for carrying off that water.

But it is said, should the "city see fit to close these ditches east of Milwaukee avenue to the river, and in lieu thereof provide an underground sewer to carry off, not only the water from the district north and south of the trunk sewer, but also the surface water that may come down Belmont avenue to Milwaukee avenue from the lands west, it is its right so to do, and the privilege of the land tributary to the trunk sewer to drain into it." Conceding this to be true, would it follow that all lands which might so drain into the sewer would be benefited by the change? In what way will the value of lands west of Milwaukee avenue be increased by providing an under-drain from that avenue to the river, through which surface water from said lands may run, instead of allowing it to continue to flow through side ditches? The evidence in this record furnishes no answer to this question. It is easy to see how the change may benefit others as a city improvement; but to say that appellants' farm lands will be actually benefited thereby would be outside of the evidence before us.

We think, however, that there is a still more formidable objection to the assessment made on appellants' lands, if it is based on the theory that they are benefited by this sewer affording them increased facilities for drainage. The ordinance provides for the construction of a sewer, and shows on its face that it is intended to serve the usual and ordinary purposes of such an improvement for city property. There is nothing whatever in its description to indicate that the city intended that the owners of farm lands might use it for the purpose of surface drainage. It may be constructed in strict conformity

with each requirement of the ordinance, and appellants be wholly unable to use it as an outlet for draining their lands. Manifestly, without some provision in addition to those prescribed, they can not do so. No one will seriously contend that the improvement contemplated is for drainage purposes, in the sense in which it is now claimed it will benefit appellants' lands. The attempt seems to be to assess benefits under this proceeding as though it had been under the act of 1885, vesting corporate authorities of cities and villages with power to construct, maintain and keep in repair drains, etc., by special assessment. At all events, to sustain this assessment would be to hold that lands benefited only by surface drainage can be specially assessed for the building of a sewer as a local improvement, under section 1, article 9, chapter 24, of the Revised Statutes, although no specific provision is made in the ordinance for such drainage. This ordinance, if it had been enacted under the statute of 1885, would be void; (see *Village of Hyde Park* v. *Carton et al.* 132 Ill. 100;) and yet the city maintains that under this proceeding to construct a local improvement it may assess all lands within a given district, because the commissioners have found that they will be benefited by such improvement as a means of drainage. This clearly could not be done unless the local improvement was constructed with a view to such drainage, and the ordinance reasonably provided the means whereby the owners of such lands could avail themselves of it for drainage purposes.

There is no theory, consistent with the evidence in this case, upon which the assessment of appellants' lands in this proceeding can be held lawful. The judgment of the county court will therefore be reversed, and the cause remanded, with directions to that court to proceed in conformity with the views here expressed.

*Judgment reversed.*