JOSEPH BICKERDIKE *et al.*

*v.*

THE CITY OF CHICAGO.

*Opinion filed April 17, 1900.*

1. SPECIAL ASSESSMENTS—*when the location of sewer out-fall is sufficiently shown.* An ordinance providing for the construction of a sewer westward from its out-fall "at the north branch of the Chicago river" will be taken as referring to the natural bed of such stream, and not to an imaginary one where there is no channel or water, created by an ordinance fixing the "north branch" at a point some four hundred feet east of its actual location.

2. SAME—*insufficiency of sewer outlet does not invalidate ordinance.* If a sewer ordinance on its face provides an outlet, objections to the sufficiency or nature of such outlet do not affect the validity of the ordinance or the right to levy the assessment.

3. SAME—*if dimensions of wall are given, size of each stone need not be stated.* If an ordinance specifies the length, height and top and bottom thickness of a rough-stone facing for strengthening a sewer out-fall, it is not necessary that the size of each stone and its kind and quality should be given.

4. SAME—*when ordinance need not specify height of man-holes.* Where an ordinance gives the dimensions and grade of a sewer throughout its entire length the height of the man-holes is determined by the difference in elevation between the sewer and the surface of the ground, and hence need not be specified.

5. SAME—*unsubdivided land cannot be assessed in character of lots.* A city cannot dictate to a land owner how he shall subdivide his land, nor can unsubdivided land be assessed in the character of lots.

6. SAME—*when house connection provision of sewer ordinance is unreasonable.* A sewer ordinance providing for house connections every twenty feet on both sides of the sewer is unreasonable in that respect, where the territory drained is unsubdivided land or is held in large tracts used mostly as hay land, and the whole territory is practically vacant, there being neither houses nor streets in most of the district.

7. SAME—*when non-abutting owners cannot be assessed for a sewer.* Property not abutting upon a sewer cannot be assessed for its cost unless there is a provision for draining the district in which it is located into the sewer, or the owner of the property is assured that he will have the benefits of the sewer.

8. SAME—*county court's apportionment of public and private cost is conclusive.* Section 47 of the Improvement act of 1897, (Laws of 1897, p. 119,) providing that the determination of the county court as to the correctness of the distribution of the cost of an improvement between private owners and the public shall not be subject to review on appeal or error, is not unconstitutional, since right of appeal from the conclusion of the county court on such question is within the legislative control.

APPEAL from the County Court of Cook county; the Hon. W. T. HODSON, Judge, presiding.

JOSEPH H. FITCH, MONTGOMERY & HART, BARKER & CHURCH, and CLARENCE KNIGHT, for appellants.

CHARLES M. WALKER, Corporation Counsel, ARMAND F. TEEFY, and DENIS E. SULLIVAN, for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellants bring here for review the record of a judgment confirming a special assessment against their lands to pay for the construction of a sewer in West Addison street, in the city of Chicago, from the north branch of the Chicago river to a point about two and a half miles west of said river. The ordinance which is the basis of the assessment provides for a brick sewer of five and a

half feet internal diameter at its outlet, narrowing to two
and a half feet at its terminus.   The sewer is to be ten
feet underground at the river and sixteen feet at the west
end.  Territory half a mile wide and two and a half miles
long, of which Addison street is the center, is declared
a drainage district for the purposes of the improvement,
and upon this district the assessment is levied. The hear-
ing in the county court was upon objections addressed
to the court.  They were overruled after reducing the as-
sessment the amount estimated for four hundred feet of
the sewer between the actual channel of the Chicago
river and the supposed channel created by city ordinance.
The objectors elected to stand by their said objections,
waiving controversy as to the question of benefits to be
tried by a jury, and judgment of confirmation was there-
upon entered.

The first of said objections presented to us is, that the
ordinance does not sufficiently specify the nature, locality
and description of the improvement.  The ordinance pro-
vides for the construction of a sewer westward from its
out-fall at the north branch of the Chicago river, and
on the face of the ordinance the locality of the out-fall
is not ambiguous.  But proof was made that the city of
Chicago, in 1895, by an ordinance officially located the
north branch at a point on Addison street about four
hundred feet east of the actual channel.   It is therefore
argued that it is uncertain whether the ordinance refers
to the actual channel or what counsel call the "official
channel."  The north branch of the Chicago river is a
well defined and well known stream, with a natural bed
and channel, which has not been changed by the city,
and the ordinance can only be taken as referring to such
existing north branch, and not to an imaginary one, where
there is no channel and no water, supposed to be created
by the ordinance.  The description is certain.  A further
objection, that if the official channel was meant the as-
sessment would be invalid because building the sewer

across the actual channel would dam the stream, is therefore not involved.

Another objection is, that an outlet at the natural channel will be insufficient, and that sewerage will accumulate and make the place a nuisance. Objections against the sufficiency of an outlet or its nature do not affect the validity of an ordinance or the right to levy the assessment. The ordinance is not invalid because the outlet has not in fact been constructed or made sufficient. The ordinance on its face provides for an outlet, and that is all that is required. *Burhans* v. *Village of Norwood Park*, 138 Ill. 147; *Payne* v. *Village of South Springfield*, 161 id. 285; *Ryder Estate* v. *City of Alton*, 175 id. 94.

Another particular in which it is contended that the description is insufficient is this: The ordinance provides that the out-fall shall be strengthened by a stone ashlar bulkhead, the sewer resting in a concrete saddle-back. The provision is as follows: "The out-fall of said sewer shall be strengthened by a stone ashlar bulkhead twelve feet wide, ten feet high, five feet thick at the bottom and three feet thick at the top, built upon a pile-and-timber foundation consisting of five rows of piles, six piles to each row, each pile to be twenty-five feet long; the top of the piles to be cut off four feet seven inches below city datum and capped with five twelve-inch by twelve-inch timbers fourteen feet long, which said timbers shall be covered with a flooring of four-inch by twelve-inch planks sixteen feet long, the front and two sides of said pile foundation to be protected by sheet piling sixteen feet long; all piles and timbers to be of the best quality white oak, securely bolted and spiked together. ˙ The five and one-half foot sewer hereinbefore described shall rest upon a concrete saddle, which shall extend nine feet six inches from the back of the stone bulkhead, and shall be twelve feet wide, five feet high at the sides, and shall rest upon the pile-and-timber foundation hereinbefore described." It is claimed that the size of each stone in

the bulkhead, and its kind and quality, should be speci-
fied, but in our opinion the objection is hypercritical, as
calling for a description of petty details both unneces-
sary and burdensome. The description "stone ashlar
bulkhead" is here used in the sense of a water face at the
out-fall, built of rough-cut or squared blocks of building
stone, which is within the defined meaning of the words.
The wall is to be twelve feet wide, ten feet high, five feet
thick at the bottom and three feet thick at the top, and
must fulfill the purpose and object of such a bulkhead.
The description is sufficient.

It is also objected that the height of the man-holes
along the sewer is not specified. The height of the sewer
throughout its whole length is shown, and the height of
the man-holes can be determined by the difference in ele-
vation between the sewer and the surface of the ground.

The next objection is, that the ordinance is unrea-
sonable and oppressive in the size of the sewer and the
number and location of the house-slants and street con-
nections. The ordinance provides that house-slants shall
be placed in both sides of the sewer opposite every twenty
feet of lot frontage, and street openings every three hun-
dred and thirty feet. But a small part of the property
along the entire length of the sewer is subdivided, and a
large part of that which is so subdivided is actually held
in large tracts. The land is mainly used as hay land and
the whole territory is practically vacant. There are a
few scattered houses on or near Elston avenue and Mil-
waukee avenue, which cross Addison street, but, as we
understand the evidence, there is only one house fronting
on the street the whole length of the sewer. The street
has all the characteristics of a country road, thrown up
in the center so as to create ditches on each side, which
carry off the surface water. The city engineer testified
that he planned the sewer for a prospective house on
every twenty-five foot lot in the whole district, with five
people in each house. He assumed a population of about

40,000, and made provision for the sewerage as well as the average rainfall. The assessment amounts to $68,000. On most of the district there are now neither houses nor streets, and the house-slants and street connections at present are entirely useless appendages. They are to be put in upon the theory that they will be required at some time in the distant future, but there is no evidence sustaining the theory that house-slants will be required every twenty feet, but rather the contrary, so that these numerous and now useless connections will never fit the property if subdivided in the future. There is no law to compel an owner to subdivide his land into twenty-foot lots, and so far as appears it is generally subdivided into twenty-five foot lots. There is no evidence that if the property should ever be subdivided and used, the owners would choose or be likely to choose to subdivide it into twenty-foot lots. The city cannot dictate to an owner how he shall subdivide his land, and the property cannot be assessed in the character of lots when not subdivided. (*Warren* v. *City of Chicago,* 118 Ill. 329; *Cram* v. *City of Chicago,* 139 id. 265; *People* v. *Cook,* 180 id. 341.) It was error to confirm the assessment charging the cost of the sewer with these connections to the owners of the land under the evidence.

The other feature of the ordinance which is claimed to be unreasonable is the size of the sewer. It is intended to take care of water in the ditches along the street from territory west of the street. There is some evidence that, in the natural state of the land, water would not flow in that way, and the sewer is made larger on that account than would otherwise be required. The city had power to provide for carrying the water from lower land west of this territory by means of this sewer, and the only question which would arise would be as to the portion of public benefit which ought to be borne by the city and the portion chargeable to the land owners in this territory.

The next point is, that the assessment on non-abutting property is invalid because there is no provision for lateral sewers, or any assurance to the owners of such lands that they will have the use of the sewer or be benefited in any manner by it. These lands are now only fit for farming, and mainly for hay land. The ditches at the side of the road now carry off the surface water, and the only difference after the sewer is in will be that this surface water will be taken underground instead of in the ditches. So far as the evidence shows the sewer will not improve the surface drainage, and if the non-abutting property is considered as property that may be subdivided in the future, there is no provision for extension, or any plan which will permit the owners of such property to use the sewer or extend its benefits to them. The territory is declared to be a drainage district for the purpose of this improvement, but, so far as appears, this is only for the purpose of enabling the city to assess all the property. No rights whatever are assured to these property owners, and no rule of action is established which gives any assurance to them. The lands are as well provided with surface drainage as they will be after the sewer is put in, and such lands will not be benefited in any manner by merely putting the drainage underground instead of in the large ditches which now carry the water. The sewer is designed to some time serve the ordinary purposes of house sewerage along Addison street, but no rights are secured to non-abutting owners and no privileges specified by which they will ever derive any benefit from it. We have held that non-abutting property can not be assessed unless there is a provision for draining the district in which it is located, into the sewer, or the property owner is assured that he will in some way be entitled to the benefits of the sewer. (*Edwards* v. *City of Chicago*, 140 Ill. 440; *Title Guarantee and Trust Co.* v. *City of Chicago*, 162 id. 505; *Gray* v. *Town of Cicero*, 177 id. 459; *Mason* v. *City of Chicago*, 178 id. 499.) As to property not

abutting upon Addison street, the assessment for this reason should not have been confirmed.

It is next claimed that the distribution of cost between the public and the property assessed was not just or equitable, and that section 47 of the act of 1897, concerning local improvements, providing that the determination of the court on that question shall be conclusive and not subject to review on appeal or writ of error, is unconstitutional and void. The estimate was that there would be no public benefit from the sewer, and the entire cost was levied on private property. We have held under former laws that the decision on that question was conclusive. The proceeding is not a case within the meaning of the constitution, and the right to appeal from the conclusion of the county court is within the control of the legislature. The act is not in violation of the constitution, and we cannot review the decision on that question.

Appellants the North Chicago Electric Railway Company and the Chicago Electric Transit Company further assign as errors that their railroad rights of way cannot be assessed for the sewer because of an ordinance requiring them to grade, pave, macadamize, plank and repair a certain width in the streets and avenues occupied by them. The proportionate share of said specified improvements to be borne by the companies was fixed by the ordinances and their acceptance by the companies. (*West Chicago Street Railroad Co.* v. *City of Chicago*, 178 Ill. 339.) It is insisted that such ordinances also provided an equivalent for special assessments for sewers, but the commutation does not extend to other street improvements. (*Parmelee* v. *City of Chicago*, 60 Ill. 267; *Chicago City Railway Co.* v. *City of Chicago*, 90 id. 573.) A sewer was not included in the agreement, which applied only to surface improvements of the street.

For the errors pointed out, the judgment is reversed as to the property of appellants and the cause remanded.

*Reversed and remanded.*