(No. 11197.—Reversed and remanded.)

THE VILLAGE OF BRADLEY, Appellant, *vs.* THE NEW YORK CENTRAL RAILROAD COMPANY *et al.* Appellees.

*Opinion filed February 21, 1917—Rehearing denied April 6, 1917.*

1. SPECIAL ASSESSMENTS—*when judgment of village officers as to necessity for improvement is conclusive.* If there is room for a reasonable difference of opinion as to whether an improvement is necessary or as to its character and extent the judgment of the president and board of trustees of a village is conclusive upon the question, and it is only where the evidence is clear and satisfactory that their action has been oppressive and without reasonable grounds that their judgment will be set aside.

2. SAME—*evidence as to benefits and damages has no bearing on the hearing of legal objections.* Evidence as to the benefits to certain pieces of property and the damage to others has no bearing on the question raised by a legal objection that the ordinance is unreasonable, unjust and oppressive because of the excessive cost of the improvement, since both the village and the property owners have a right to a trial by jury on the question of benefits.

3. SAME—*ordinance may refer to statute for manner in which division into installments may be made.* An ordinance for a local improvement may refer to the statute for the manner in which the division of the assessment into installments shall be made without repeating the language of the statute, which is definite and specific, and the fact that the commissioners fail to follow the directions of the statute does not invalidate the ordinance.

4. SAME—*decision of court as to apportioning public and private benefits cannot be reviewed.* The decision of the county court upon the question of apportioning the benefits between the public and the private property assessed is made conclusive by the statute and is not subject to review.

5. SAME—*duty of county court where distribution of cost of improvement is unjust.* The fact that the distribution of the cost of the improvement between the public and private property as made by the ordinance is inequitable and unjust does not authorize the county court to dismiss the petition but it is the duty of the court to so modify the distribution as to make it equitable and just.

6. SAME—*when false particular of description of an improvement will not invalidate the ordinance.* Where an ordinance provides for the construction of a system of sewers "within the village" and goes on to describe the improvement in detail, being a system of sewers in the village but including an outlet sewer to be

constructed beyond the boundaries of the village, the false particular of the description as being "within the village" will not avoid or make uncertain the description of the improvement so as to invalidate the ordinance.

APPEAL from the County Court of Kankakee county; the Hon. JAY H. MERRILL, Judge, presiding.

E. A. MARCOTTE, JOHN H. BECKERS, and MORTON T. CULVER, (A. E. SMITH, of counsel,) for appellant.

SMALL, BRATTON & SCHROEDER, W. R. HUNTER, GOWER, HOBBIE & PARISH, SAVARY & RUEL, DYER & WHITTEMORE, A. L. GRANGER, C. M. C. BUNTAIN, and H. K. & H. H. WHEELER, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The president and board of trustees of the village of Bradley adopted an ordinance for the construction of a system of brick and tile-pipe sewers in the village of Bradley, with a brick outlet sewer leading from the village to and discharging in the Kankakee river. The village filed a petition in the county court of Kankakee county for the purpose of ascertaining the just compensation for property to be taken or damaged in making the improvement and of assessing upon property benefited by the improvement the amount of such benefit. Many property owners appeared and filed numerous objections. The cause was heard by the court upon the legal objections, and they were all overruled except the first, tenth, eleventh, sixteenth and eighteenth, which were as follows:

1. "The ordinance providing for said proposed improvement is unreasonable, unjust and oppressive and void, as authorizing the expenditure of an amount of money greatly in excess of the necessary cost of an adequate sewer system for said village of Bradley."

10. "Said ordinance provides for a division of the aggregate amount of said assessment and each individual as-

277 – 39

sessment, and also the assessment against the municipality, if any, into ten installments, but does not provide that so much of the aggregate amount assessed as represents the compensation for property to be taken or damaged, together with the cost of making and collecting the special assessment, shall be apportioned to the first installment, as required by section 42a, added to an act of the General Assembly of the State of Illinois entitled "An act concerning local improvements," approved June 14, 1897, in force July 1, 1897, as subsequently amended by amendment thereto approved June 23, 1915, wherein 'said ordinance is in violation of said statute as amended and void."

11. "Said assessment is manifestly unfair and unjust in not assessing any part of the cost of the proposed improvement against the village of Bradley for benefits to the public."

16. "The improvement proposed by said ordinance is a general improvement and not a local improvement."

18. "The commissioners have not apportioned the cost of said proposed improvement between the public and the private property so that each shall bear its relative equitable proportion, as required by statute, and objector avers that the public will be benefited by said proposed improvement."

These objections were sustained and as to the property for which such objections were filed the petition was dismissed, and the petitioner appealed.

The first objection is based upon the excessive cost of the system of sewers.

The village of Bradley is a manufacturing village having a population of about 2500. The Illinois Central railroad runs through the village north and south. The property on each side of the railroad is largely occupied by the buildings of factories and other industries, where a large number of persons, both residents and non-residents of the village, are employed. The village is without a sewer system. East of the railroad a stream called Soldier creek

flows from a point just south of the village limits south through the city of Kankakee into the Kankakee river. During high water this stream sometimes overflows its banks and at other times becomes almost dry. The sewer district includes that part of the village west of the railroad, where four-fifths of the inhabitants reside, and a part of that part of the village east of the railroad. Outside of the factory buildings there are 556 buildings in the village, 467 of which are within the sewer district. Of these 381 have direct connections with the sewer and 86 have not. There are 1661 vacant lots in the district, of which 937 have direct sewer connections and 724 have not. Besides these are the industrial plants and manufacturing establishments. There are 1350 lots on the east side of the railroad outside of the sewer district. The outlet of the proposed sewer system is outside the village and extends from the southern boundary of the village southwest 4350 feet to the Kankakee river.

The objectors, in support of their first objection, introduced evidence for the purpose of showing that a better system of drainage for the village could be obtained for less money by using Soldier creek as an outlet, and that this system would drain a larger part of the village, including the 1350 lots omitted from the proposed sewer district. Engineers were produced upon either side who testified in regard to the feasibility and expense of the two systems, and there was a wide variation in their opinions. So far, however, as the question of the excessive cost of the system proposed by the petitioner is concerned, the evidence fails to show it. The testimony of the objectors tends to show that the improvement of Soldier creek from a point two hundred feet south of the village through the city of Kankakee to the Kankakee river would cost $125,000, of which the share of the village of Bradley would be $70,000, and that the expense of the sewer system within the village would be $100,000. The estimated cost of the improve-

ment proposed, including the compensation for property taken or damaged, was $185,711.66. The $170,000 did not include the court costs and other expenses or the compensation for land taken or damaged by the improvement, so that the evidence shows no substantial difference in the cost of the two sewer systems. The one having the outlet through Soldier creek, however, included a greater part of the territory of the village. There was testimony, however, tending to show that it was uncertain whether the capacity of the proposed Soldier creek system would be sufficient to carry off the water in its watershed, and tending to show that the east part of the village was sparsely populated and the need of a sewerage system was comparatively slight. It was also admitted that the use of Soldier creek as an outlet could not be availed of by the village of Bradley acting alone, the larger part of it being within the limits of the city of Kankakee. It was proposed that such use should be secured by the organization of a drainage and sanitary district in which the city of Kankakee should join. The necessity of a sewerage system for the village of Bradley is apparent, but it is not apparent what is the most desirable, cheapest and most economical system. Under such circumstances the decision of the municipal authorities is conclusive. The necessity of an improvement and its character and extent are committed to the judgment of the president and board of trustees of the village, and it is only where the evidence is clear and satisfactory that their action has been oppressive and without reasonable grounds that their judgment will be set aside. If there is room for a reasonable difference of opinion their action is final. *City of Marengo* v. *Eichler,* 245 Ill. 47.

Much evidence was introduced on this hearing in regard to the amount of benefits that would be received by certain particular pieces of property and the amount of damages that would be occasioned to certain other pieces of property, but this evidence could have no bearing upon the determi-

nation of the objection as to the reasonableness or unreasonableness of the ordinance.  The sewer could not be constructed unless the benefits to the property, together with the amount paid by the village, are sufficient to pay the expenses.  The only question to be determined under this objection is whether the ordinance is unreasonable and is unjust and oppressive by reason of the excessive cost of the improvement, and the amount of the assessment on any particular piece of property, or the amount of compensation to be paid for any particular piece of property, cannot affect that question.  The cost is limited by the estimate, and the assessment upon any property is limited to the amount which it will be benefited.  If the system can be constructed for an amount within the estimate and no property is assessed more than it will be benefited the construction can not be said to be unjust or oppressive.  As to the amount of the benefit, both the village and the property owners have a right to a trial by jury, and the question is not to be determined on the hearing of legal objections.  The evidence does not show an abuse of the discretion of the president and trustees of the village in the passage of the ordinance, and the first objection should therefore have been overruled.

The next objection refers to the division of the assessment into installments, which is said not to comply with the statute because the ordinance does not provide that so much of the aggregate amount assessed as represents the compensation for property to be taken or damaged, together with the cost of making and collecting the assessment, should be apportioned to the first installment, as required by section 42*a* of the Local Improvement act.  The ordinance provided that the assessment should be divided into ten installments bearing five per cent interest per annum, and should be "collectible all in the manner provided in and by said act of the General Assembly of the State of Illinois entitled 'An act concerning local improvements,' approved June 14, A. D. 1897, in force July 1, A. D. 1897,

and subsequent amendments thereto." The commissioners, in making the assessment, divided it into ten installments, the first being $21,011.66 and the other nine $18,300 each. The amount of the estimate was $183,500. The compensation for property taken was assessed at $2211.66 and the cost of making and collecting the assessment at $10,703, making a total of $12,914.66, which should have been added to the first installment under section 42a of the statute. This would make that installment $30,911.66 and each subsequent installment $17,200. The commissioners therefore did not divide the assessment into installments in accordance with section 42a of the Local Improvement act as amended in 1915, as they should have done under the ordinance.

The appellees insist that the ordinance should have contained, in itself, a statement of the manner in which the assessment should be divided, and that a reference to the statute for that purpose was not sufficient. The ordinance refers to the statute for the manner in which the division into installments should be made, and, taken in connection with the statute, is definite and certain. (*Andrews* v. *People,* 164 Ill. 581.) When the ordinance directs that a thing shall be done in accordance with the statute and the statute states definitely and specifically the manner in which it shall be done, it is unnecessary that the ordinance should repeat the language of the statute. The act of the commissioners in failing to observe the statute as the ordinance directed them to would not invalidate the ordinance. It was sufficient ground for causing their report to be modified to conform with the statute but it was not ground for dismissing the petition.

Objections 11 and 18 are on the ground that no part of the cost of the improvement has been assessed for public benefits against the village. The statute authorizes a city or village, when providing for the making of a local improvement, to prescribe whether the same shall be made by spe-

cial assessment or by special taxation on contiguous property or general taxation, or both, and the ordinance was therefore not void, but section 39 of the Local Improvement act requires the officer making the assessment to estimate what proportion of the total cost will be of benefit to the public and to the property to be benefited, respectively, and to apportion the same between the city, village or town and such property, so that each shall bear its relative equitable proportion.   Section 47 authorizes the court, upon objection, to inquire in a summary way whether or not the assessment returned is an equitable and just distribution of the cost of the improvement between the public and the property assessed, and to change or modify the distribution of the total cost between the public and property benefited, and makes its determination of that question conclusive. We cannot, therefore, review a decision of the court on that question.   (*Bickerdike* v. *City of Chicago,* 185 Ill. 280; *Graham* v. *City of Chicago,* 187 id. 411; *Hyman* v. *City of Chicago,* 188 id. 462; *Berdel* v. *City of Chicago,* 217 id. 429; *Clark* v. *City of Chicago,* 229 id. 363.)   The court, however, could not dismiss the petition because the apportionment of the cost of the improvement between the public and the property benefited was not equitable and just. It was its duty, in such case, to change or modify the distribution so as to produce an assessment which was equitable and just.

The sixteenth objection is that the proposed improvement is a general improvement and not a local improvement.   The outlet of the sewer system, following substantially the line of a privately owned 15-inch sewer, crossed that line in three places. . The ordinance provided that "wherever any underground or existing drain is intersected it shall be connected with the sewer system at its point of intersection."   The lines of the two sewers intersected first within the village on substantially the same level; at the next crossing the outlet to the sewer system was several

feet below the private sewer; at the third intersection the respective levels of the two sewers do not appear. This private sewer was originally constructed under grants in which the land owners reserved the right to connect with the sewer for household and land drainage purposes at their own expense. The grants were for the use of the Gibbs chair factory, and there was no mutual agreement between the owners of the land through which the sewer passed, the grants being separate instruments. There are various connections with this sewer made on lands through which it passes outside the village of Bradley. It is contended that the provision of the ordinance for connecting with the private sewer at its point of intersection allows connection to be made with the outlet outside of the city, and constitutes the improvement a general and not a local improvement, because the land owners outside the village will be benefited by the improvement and cannot be required to pay for it and the ordinance does not attempt to require them to pay for it. The evidence does not sustain the contention. It shows that the private sewer in question will be intersected within the village and will there be connected with the village sewer, but the evidence does not show any other intersection. The next place where the lines of the sewers cross is outside the village, but there is no intersection, for the outlet to the sewer system passes several feet under the private sewer. The ordinance authorizes the contractor, where it is found expedient to do so, to lay the sewer in a tunnel, and at the second point of intersection, which is outside the city, the sewer system will be carried underneath the private sewer. At the third place where the lines of the sewers cross it does not appear whether the sewers will be on the same level or one above the other, and therefore it is not shown that there will be any connection at that point. It therefore does not appear that any connection with the sewer system will be made outside the city.

The appellees have assigned cross-error on the overruling of their objection that the "proposed improvement is described and located in and by said ordinance as within the village of Bradley while a large part thereof is to be outside of the corporate limits of said village, and therein said ordinance is erroneous and void." The first section of the ordinance prescribes that a local improvement shall be made within the village of Bradley, county of Kankakee and State of Illinois, the nature, character, locality and description of which local improvement is as follows. Then follows a description of the various places in which the sewer shall be laid, together with the grade, size and other particulars of the construction, including all the sewers to be laid in the village. This is immediately followed by the statement that a brick sewer of cylindrical shape, having an internal diameter of forty-eight inches and made with a double ring of sewer brick laid edgewise, shall be constructed along the line, as follows: "From the junction of the sewer to be constructed and laid in South street with the sewer to be constructed and laid in the alley between Wabash avenue and Michigan avenue south to a point in the south line of South street where said south line is intersected by the center line produced of the said alley between Wabash avenue and Michigan avenue and running thence southwesterly in a straight line," etc., describing the outlet sewer to its termination in the Kankakee river, which is outside the village. Therefore the description shows that that portion of the sewer constituting the outlet from the village to the Kankakee river is wholly outside the village. That part of the description which says that the improvement is to be made within the village of Bradley is inconsistent with the description of the outlet sewer from the village to the Kankakee river, and may be rejected so far as that part of the improvement is concerned. It is merely a false particular of description which does not avoid or make uncertain the description of the improvement. The

ordinance sufficiently describes an improvement consisting
of a system of sewers within the city with an outlet extend-
ing beyond the city, and the objection was properly over-
ruled.

The judgment is reversed and the cause is remanded to
the county court, with directions to overrule all the legal
objections except objections 11 and 18, and upon those ob-
jections to change the assessment, if necessary, so as to
produce a just and equitable distribution of the cost of the
improvement between the public and the property benefited.

*Reversed and remanded, with directions.*