STATE ex rel. CHARLES S. McKUNE v. DISTRICT COURT OF RAMSEY
COUNTY and Another.[1]

November 27, 1903.

Nos. 13,623—(16).

**Assessment for Local Improvement.**

Where a sewer is constructed in part across private property, so that
it is inaccessible to the owner of a lot assessed for benefits without the
commission of a trespass upon such property, such assessment for benefits
must have been made through fraud or demonstrable mistake of fact, and
cannot be sustained.

**Easement over Private Property.**

In the case at bar certain contracts were made with the owners of pri-
vate property and the city whereby an easement for the sewer in ques-
tion was obtained, and the sewer was laid therein. *Held,* that under
these contracts the city obtained no right to enter upon the property for
the purpose of connecting the sewer with property elsewhere.

Writ of certiorari issued from the supreme court, upon relation of
Charles S. McKune, to review an order of the district court for Ramsey
county, Orr, J., in proceedings to enforce payment of an assessment
for the construction of a sewer. Order reversed, and judgment or-
dered in favor of relator.

*J. B. Jett* and *A. R. Capehart,* for relator.

*J. C. Michael* and *G. R. O'Reilly,* for respondents.

COLLINS, J.

Writ of certiorari to the district court of Ramsey county. It ap-
pears from the return that on the application of the city of St. Paul
for judgment on assessments for benefits in the matter of the construc-
tion of a sewer on the center line of Cook street to the westerly line
of Mississippi street, which was at right angles with Cook, and thence
over and across vacant private property some six hundred feet westerly
to what is known as the "Trout Brook Culvert," one of the owners,
this relator, appeared and objected; that his objections were overruled,

[1] Reported in 97 N. W. 425.

and judgment ordered against his property to the amount of the assessment for benefits as such assessment had been confirmed by the board of public works.

The private property referred to was lots numbered twelve and thirteen in Hoyt's Outlots, and the center line of Cook street projected westerly to the culvert was the dividing line between said lots, twelve being directly north of thirteen. The easterly half of lot twelve, adjoining Mississippi street on the west and extending westerly about three hundred thirty feet, is the property of the objector, while the land lying directly south of it, a part of lot thirteen, belongs to people by the name of McMenemy. The balance, or west half, of lot twelve, and the balance, or west half, of thirteen, lying directly south of twelve, is the property of the Northern Pacific Railway Company. It became necessary for the authorities to acquire an easement westerly from Mississippi street to the culvert on which to place the sewer, and the plan for the improvement, made by the city engineer, located all of the easement on the dividing line between lots twelve and thirteen, but wholly upon the last-named lot. In other words, the proposed easement for the sewer was south of the center line of Cook street projected to the culvert. A written agreement was then entered into between the McMenemys and the city, which authorized the latter to construct this sewer along this line, and a similar contract was entered into between the Northern Pacific Railway Company and the city. In each of these contracts it was provided that the easement was to extend from the westerly line of Mississippi street in the city, in a straight line southerly of and along the dividing line between the lots before mentioned, to the point of its connection with a culvert already maintained in Trout brook; a blue print diagram showing the precise location of the easement being attached to each of these contracts.

Instead of following the center line of the easement as located by the contracts, the sewer was built at an angle and southerly, deviating from the dividing line between the lots twelve and thirteen from one inch at the west line of Mississippi street, where the easement began, to eight feet at the culvert; and therefore the sewer was so located that at no point did it touch the south line of this relator's lot. The agreements made between the McMenemys and the city and between the railway company and the city expressly relieved the McMenemys and

the company from all assessments for benefits, and this was the only consideration for the easement. But benefits were estimated, and the amount thereof assessed against the objector's property, as before stated.

It is contended by the corporation attorneys that under the contracts between the lot owners and the city the right to tap this sewer at any point opposite the objector's land was reserved, and may be exercised, and this seems to have been the view of the court below. We have examined the contracts closely, and they are incapable of any such construction. In addition to permission and license to extend and construct the sewer over and upon the land mentioned along the line fixed by the attached diagrams, the city was licensed and authorized from time to time, as the case might require, to enter upon the premises for the purpose of keeping the sewer in repair. This was the full extent of the license or authority; nothing further. There was no right granted to enter upon the land owned by either of the parties before referred to for any other purpose. The authority conferred by the agreement is not broad enough to justify or warrant any party, private or public, in entering upon lot thirteen for the purpose of making sewer connections, and without this right secured no connections can lawfully be made without the commission of a trespass.

We have, therefore, a case in which benefits have been assessed against the objector's land when the sewer is inaccessible, and he can receive no benefits from its construction. He cannot reach it without trespassing upon private property. Under these circumstances the assessment must have been made by fraud or demonstrable mistake of fact, and the action of the board of public works is subject to supervision and correction. The benefits derived from the construction of the sewer are real and substantial to lot owners on Cook street and elsewhere, and also to the private parties over whose lands it was actually laid. But it is seen at a glance that no benefits have accrued to the relator's real estate, and an order for judgment based upon accruing benefits thereto cannot be upheld. A lot owner whose property is not benefited by a sewer cannot be compelled to aid in its construction when he seasonably objects, and it is apparent that the attempt to assess benefits arises out of fraud or a demonstrable mistake of fact—exactly the situation here.

Several other questions are raised by his counsel, but they need not be discussed on this appeal.

The order of the court below is reversed, and the cause is remanded, with directions to enter judgment in favor of this relator in accordance with the views herein expressed.

Order reversed.