CHARLES CARROLL, Judge.
This is an appeal by the owner of a lot located in the City of North Miami, from an order of the circuit court dismissing his petition for review of a ruling of the city council which had rejected his application thereto for adjustment of a sewer project assessment on his lot, having an irregular shape and shallow depth, following assessment of abutting properties which had been made on a frontage basis.
Incident to a Sanitary Sewer Project in a certain section of the appellee City of North Miami, the city imposed an assessment upon the abutting properties. In so doing the city proceeded on statutory authority. Relating to such projects, § 184.-05(7) Fla.Stat., F.S.A. provides that upon completion of the work an assessment roll shall be prepared which shall contain certain information including description or designation of the abutting lots or parcels, and a statement of the total cost of the improvements. Subparagraph (c) of § 184.05(7) provides:
“An apportionment as between the municipality and property of the cost of each improvement, including incidental expense, to be computed as follows:
* * * * * *
“2. To abutting property shall be apportioned, all or any part of the cost of the sewer improvement as may be fixed by resolution ordering the sewer improvement, not including therein, however, the cost of laterals, ¡pumping station or outlet, such assessment to be made according to frontage or such other method which the governing body of the mu *500 nicipality shall deem equitable under the circumstances, and
“3. To the municipality shall be apportioned the remaining cost of the sewer improvement, unless the municipality by resolution has apportioned all of the cost of such sewer improvement to the abutting property as provided in subsection (2); provided, however, that in the case of lots or parcels which abut on more than one street or which have irregular shapes or unusual depths or which are served or are to be served by such sewer improvement although not abutting upon either side of the street in which such sewer improvement is constructed, the apportionment shall be made under such rules and regulations as the council shall deem to be fair and equitable[Emphasis added.]
Initially the assessments on the abutting' properties were made on a square foot basis. In a class suit brought on behalf of the owners of some forty-odd parcels which were affected, two of which were owned by the appellant Ralph B. Carter, Jr., the trial court rejected a challenge of the assessments. On appeal by the plaintiff this court reversed. See Whitman v. City of North Miami, Fla.App.1969, 223 So.2d 105. Therein we held the square foot method of determining the amounts of assessments on abutting properties was improper under the circumstances, and that the assessments should be made on a frontage basis; and also held that the cost to be apportioned to abutting properties should be reduced by excluding therefrom the cost of the pumping station (which item had been included by the city contrary, to a provision of the statute quoted above). The cause was remanded with direction to the trial court “to require the municipality to reassess the abutting property owners for their proportionate share of the sewerage project, first adjusting the cost basis by deducting the cost of the pumping station from the total price, and then apportioning the remaining cost to the property owners on the basis of their front footage which abuts the project.” Pursuant thereto the trial court made an appropriate order following remand. Therein, after providing for the assessments on a front footage basis, the order stated: “Any individual person affected by this is not precluded from appearing before the council and objecting to it, if so desired.”
The appellant Carter was not one of the “name” plaintiffs in the class suit, but he was one of the members of the class for whose benefit the suit was brought. The two lots owned by him fronted on and were situated on opposite sides of 135th Street, one of the streets affected. One of the Carter lots was rectangular in shape. The other Carter lot was in the form of a triangle, lying lengthwise of the street. Due principally to reduction of the cost apportioned to abutting properties which resulted from exclusion of the cost of the pumping station, the assessments on the abutting properties on a frontage basis proved to be substantially less than the earlier square foot assessments. Such reduction was proportionately reflected in the new assessment of the rectangular lot owned by Carter. However, the reassessment on a frontage basis, when applied to Carter’s triangular lot, resulted in a charge against that lot of $6,520.50, as compared to the $2,337.09 assessment which had been assigned thereto on the previously used square foot basis.
The Carter lot in question has a frontage of 797.66 feet on 135th Street. Its depth at one end is 127 feet. From that end the depth tapers to zero at the other end of the lot. The irregular shape of the lot, and the lack of any substantial depth behind a large portion of its frontage is disclosed by the following outline of the lot as it appears on a survey in the record.

*501

*502 Relying upon the provision of § 184.05(7) (c) (3) that in making such assessments on abutting properties the apportionment thereof on lots or parcels which have irregular shapes or unusual depths “shall be made under such rules and regulations as the council shall deem to be fair and equitable,” Carter applied to the council for reduction of the assessment against his triangular lot on the ground that the amount assigned thereto on the frontage basis was not fair and equitable in view of its shape and lack of depth. His application was rejected by the city council.
Thereupon Carter filed a petition in the above described suit. Therein he called attention to the provision of the order, entered by the circuit court on the mandate, that any individual affected should, not be precluded from objecting to an assessment as made, and reciting the amount of the assessment on the triangular lot which resulted from the second assessment on the frontage basis, and the refusal of the council to modify its assessment as imposed on his triangular lot. By his petition Carter sought to have the assessment on his triangular lot declared to be excessive and unreasonable, and out of proportion to the special benefits thereto.
By answer to the petition the city contended Carter was estopped to seek relief from the amount of the assessment of his triangular lot (1) because he was a member of the class which had sought and obtained a judgment requiring the assessments on abutting properties to be made on a frontage basis, and (2) because Carter had accepted the benefit of the judgment requiring frontage assessment as applied to his other, regular shaped lot.
On trial of the matter before the court Carter presented an appraiser, J. N. Lum-mus, Jr., who testified that the frontage assessment on the abutting parcels operated to impose thereon a charge of $8.17 per lineal foot; that a depth of 100 to 150 feet was considered necessary for utility of a lot; that only one third of Carter’s triangular lot (omitting exact measurement) had a depth justifying application thereto of the pro rata frontage charge; that the middle third of the lot, by reason of inadequate depth should be burdened with only 60% of the standard frontage charge; and that the remaining third of the lot was so lacking in depth and utility value as to preclude application of the $8.17 per foot charge to that portion of its frontage. Based thereon the witness expressed the opinion that because of the shape and depth, or rather lack of depth of the lot, application of the charge of $8.17 per lineal foot for the entire lot was excessive, and that a fair and equitable assessment on that lot would require reduction of the assessment to $3,360.43. No testimony was presented in opposition thereto.
The trial court dismissed the Carter petition with prejudice, upon adopting the city’s argument that Carter was estopped to seek such relief. In our opinion the dismissal of the petition was error. The determining factor, with reference to estoppel, is that in seeking an adjustment of the assessment imposed on his triangular lot, Carter was not challenging the front footage basis of assessment, but was seeking an adjustment of the amount which was assigned to his lot on that basis, as being inequitable and requiring reduction due to the peculiar shape and lack of depth of the lot. It appears clear, from the nature of the lot, as well as from the evidence relating thereto, that Carter’s petition seeking adjustment of the assessment against that lot was meritorious.
In the judgment rendered on the prior class suit, individual lot owners were expressly granted the right to object to assessments which would be made on the frontage basis which the judgment required to be used. Moreover, indicative of the lot owner’s right to such relief is the provision of the statute [§ 184.05(7) (c) (3)] which recognized that for lots having irregular shapes or unusual depths, adjustment of the assessments (directed by *503 the statute to be made generally on a frontage basis) should be made in order for the amounts charged against such lots to be fair and equitable.
The justification in law for such assessments on abutting properties is the benefit to the properties involved. Ideally, a separate determination could be made of the benefit to each such parcel in fixing the assessments, but to attempt or require that would be impracticable. However, as to parcels not having irregular shapes or unusual depths, the benefit to each abutting parcel should be substantially the same, and justify pro rata charges against such parcels on a frontage basis, and thereby equitable application of the charge to the properties involved generally is> achieved. See Utley v. City of St. Petersburg, 107 Fla. 6, 144 So. 58; City of Fort Myers v. State, 95 Fla. 704, 117 So. 97.
In obvious recognition of the requirement that the amount assessed against an abutting parcel should be predicated upon benefit, and that an assessment would fail in that respect where imposition thereof on a pro rata basis (such as by front footage) would represent a charge inconsistent with benefit conferred (whether too little or too much), when applied to a lot or parcel of irregular shape or unusual depth, the statute made provision for adjusting the assessment on such a lot to an amount which would be fair and equitable.
The refusal of the city council to lower the assessment on the appellant’s said lot was a departure from essential requirements of law in that it represented a failure to revise the amount of the assessment which had been indicated for that lot on frontage basis, to a sum which would be an apportionment thereto that was fair and equitable, taking into consideration the irregular shape and lack of normal depth of the lot, as contemplated and provided by the statute to be done in such instance.
Accordingly, the order appealed from is reversed, and the cause is remanded for entry of an order by the circuit court directing the respondent city through its city council to reconsider the Carter application relating to the assessment of the lot in question, at a hearing upon notice, and thereupon to reduce the assessment on the said Carter lot to an amount which the city council shall deem to be a fair and equitable assessment allocation for that lot upon giving consideration to its irregular shape and shallow depth.
It is so ordered.